NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0820n.06
Filed: November 29, 2007

No. 06-4075

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MOUNTAIN CLAY, INC., | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | BENEFITS REVIEW BOARD |
| CHARLIE COLLINS, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |
| DIRECTOR, OFFICE OF WORKERS | ) | |
| COMPENSATION PROGRAMS, UNITED | ) | |
| STATES DEPARTMENT OF LABOR, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |

BEFORE:    KEITH, ROGERS, Circuit Judges; and ALDRICH, District Judge[*]

DAMON J. KEITH, Circuit Judge.  Petitioner, Mountain Clay, Inc. ("Mountain Clay"),

appeals from the June 13, 2006, decision and order of the Benefits Review Board ("the Board"),

affirming an administrative law judge ("ALJ") decision and order awarding black lung benefits

to Respondent, Charlie Collins ("Collins"), under the Black Lung Benefits Act, 30 U.S.C. §§

901-45.  For the reasons stated below, we **AFFIRM**.

I.

_____

[*]The Honorable Ann Aldrich, United States District Court for the Northern District of
Ohio, sitting by designation.

For approximately forty years, Respondent Collins worked in a coal mine operated by Mountain Clay and its predecessors. Collins was a regular smoker for at least eight years, ending in 1977. Around 1962, Collins first began experiencing breathing problems, and he sought medical care for those problems in 1965. Presently, at age seventy-one, Collins has difficulty climbing steps and cannot walk short distances without resting.

Collins was examined by three doctors–Glen R. Baker, David M. Rosenberg, and A. Dahhan. All three physicians agreed that Collins is totally disabled by an obstructive respiratory impairment. Dr. Baker, a pulmonary specialist, examined Collins at the request of the Department of Labor on March 23, 2002. His examination consisted of a medical history, a physical, pulmonary function and arterial blood gas studies, a chest x-ray, and an EKG. Dr. Baker diagnosed Collins with pneumoconiosis, which he believed was due to a combination of Collins's coal dust exposure and smoking.

Drs. Rosenberg and Dahhan examined Collins at the behest of Mountain Clay. Both doctors found no presence of pneumoconiosis primarily because they believed, first, that whereas pneumoconiosis is irreversible, Collins "responded" to bronchodilator treatment, suggesting that his condition was reversible, and, second, in comparing Collins's condition with several studies showing that miners with no history of smoking did not develop a significant reduction in pulmonary function, Collins's symptoms were too severe to have been caused by coal dust exposure. Mountain Clay also commissioned Dr. Wiot to examine Collins's chest x-ray, and Dr. Wiot interpreted Collins's x-ray as negative for pneumoconiosis, attributing Collins's abnormalities to past surgery.

In evaluating the medical evidence, the ALJ, after a formal hearing, chose to credit Dr.

Baker's determinations that Collins suffered from pneumoconiosis that was caused in part by coal dust exposure, that Collins was totally disabled, and that Collins's disability was due to pneumoconiosis. The ALJ accorded less weight to the opinions of Drs. Rosenberg and Dahhan because (1) their opinions were based on scientific studies that claimed nonsmoking miners who were exposed to coal dust never developed a disabling obstructive respiratory impairment, and therefore both doctors were hostile to the Federal Coal Mine Health and Safety Act of 1969, and (2) both doctors based their conclusions about the absence of pneumoconiosis, in part, on their belief that Collins "responded" to bronchodilator treatment even though Collins's overall pulmonary function (measured by the $FEV_1/FVC$ ratio) declined after the administration of bronchodilator treatment.

In affirming the ALJ's decision to award benefits, the Board found that Dr. Baker's opinion established the existence of legal pneumoconiosis and that substantial evidence supported the ALJ's findings.

## II.

This court "'has a limited scope of review over the decisions of the Benefits Review Board'' and the ALJ." *Saginaw Mining Co. v. Ferda*, 879 F.2d 198, 205 (6th Cir. 1989) (quoting *Welch v. Benefits Review Bd.*, 808 F.2d 443, 445 (6th Cir. 1986) (per curiam)). "This Court must affirm an ALJ's decision so long as it is supported by substantial evidence and is in accordance with the applicable law." *Peabody Coal Co. v. Greer*, 62 F.3d 801, 804 (6th Cir. 1995). Whereas questions of law are reviewed *de novo*, *Greer*, 62 F.3d at 804 (stating that "[t]his Court has plenary authority

to review the Board's legal conclusions"), questions of fact are reviewed for substantial evidence. *Tenn. Consol. Coal Co. v. Crisp*, 866 F.2d 179, 184 (6th Cir. 1989). Substantial evidence is "more than a mere scintilla"; it must include "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Adams v. Peabody Coal Co.*, 816 F.2d 1116, 1121 n.2 (6th Cir. 1987) (quoting *Ramey v. Kentland Elkhorn Coal Corp.*, 755 F.2d 485, 488 (6th Cir. 1985)). In evaluating whether there is substantial evidence to support the ALJ's finding, "an appellate tribunal may not reweigh the evidence or make credibility determinations" or "evaluate and resolve conflicting medical evidence." *Adams*, 816 F.2d at 1120-21.

It is under this highly deferential standard of review that we now turn to Mountain Clay's contentions of error. Mountain Clay argues that the ALJ erred by finding that (1) Collins has legal pneumoconiosis and (2) Collins's disability was due to pneumoconiosis. Based on our review of the medical reports, we find that substantial evidence supports the ALJ's decision to award benefits to Collins.

III.

Under the Black Lung Benefits Act, a coal miner may receive black lung benefits if he can prove: "(1) he suffers from pneumoconiosis; (2) the pneumoconiosis arose out of coal mine employment; and (3) the pneumoconiosis is totally disabling." *Jericol Mining, Inc. v. Napier*, 301 F.3d 703, 708 (6th Cir. 2002) (quoting *Peabody Coal Co. v. Hill*, 123 F.3d 412, 415-16 (6th Cir. 1997)). Mountain Clay contends that the ALJ erred in finding that Collins suffered from legal pneumoconiosis because the ALJ incorrectly discredited the opinions of Drs. Rosenberg and Dahhan

and improperly relied on Dr. Baker's opinion.

The ALJ accorded less weight to the opinions of Drs. Rosenberg and Dahhan because (1) they relied on studies claiming that miners who did not smoke never developed pneumoconiosis, and (2) they claimed that Collins "responded" to bronchodilator therapy. In black lung cases, a medical opinion may be discredited for improper bias where "the physician's predisposed belief forms the primary basis for his conclusion that the miner's pneumoconiosis is not totally disabling, or that any respiratory impairment which the miner has could not be due to pneumoconiosis . . . ." *Adams*, 816 F.2d at 1119. Where a doctor finds that "there is no good clinical evidence in the medical literature that coal dust inhalation in and of itself causes significant obstructive lung disease," that doctor's opinion is validly discredited because his opinion is "not in accord with the prevailing view of the medical community or the substantial weight of the medical and scientific literature." *Freeman United Coal Min. Co. v. Summers*, 272 F.3d 473, 483 n.7 (7th Cir. 2001).

Mountain Clay argues that the opinions of Drs. Rosenberg and Dahhan are not hostile to the Act because both physicians acknowledged the possibility that coal dust exposure can cause pneumoconiosis.[1] However, even though both physicians admitted that coal dust exposure can cause pneumoconiosis, their medical opinion of Collins's condition was based on scientific studies that "showed miners who did not smoke and were exposed only to coal dust never developed a disabling

---

[1]Mountain Clay also analogizes to the "true doubt rule," claiming that discrediting the testimony of Drs. Dahhan and Rosenberg amounts to an impermissible shift of the burden of persuasion to the party opposing the benefits claim. However, an analogy to the true doubt rule is inapplicable because the evaluation of Drs. Dahhan and Rosenberg deals primarily with credibility, not the question of shifting burdens. Mountain Clay does not cite anything in the record to show that the burden was actually shifted in this case.

obstructive respiratory impairment," a premise that the ALJ correctly "found contrary to the regulations, both by the courts and in the comments to the amended regulations." *See* Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, 65 Fed. Reg. 79,920, 79,938-42 (Dep't of Labor Dec. 20, 2000). Relying on these studies, Drs. Dahhan and Rosenberg concluded that because a severe disabling obstructive impairment is "rarely if ever seen secondary to the inhalation of coal dust, *per se*," Collins's impairment was unrelated to coal mine employment.

In essence, both physicians took studies that were antithetical to the Act and used them to conclude that Collins's air flow obstruction was too severe to have been caused by coal dust exposure. As the Board noted, "a review of their opinions confirms the administrative law judge's conclusion: the doctor's analyses of the evidence were predicated on the studies they cited, these studies formed the prism through which the doctors saw and understood the evidence."

This type of biased analysis is exactly the type of hostility that may be discredited. The "'hostility-to-the-Act' rule 'allows an ALJ to disregard medical testimony when a physician's testimony is affected by . . . opinions . . . contrary to the congressional determinations implicit in the Act's provisions.'" *Blakely v. Amax Coal Co.*, 54 F.3d 1313, 1321 (7th Cir. 1995). In determining whether to disregard a diagnosis as "hostile to the act," courts must evaluate "whether and to what extent [the doctor's] hostile opinions affected the medical diagnosis." *Id. See also Wetherill v. Dir., Office of Workers' Comp. Programs*, 812 F.2d 376, 382 (7th Cir. 1987) (not followed on other grounds, *Freeman United Coal Min. Co. v. Foster*, 30 F.3d 834 (7th Cir. 1994)). In this case, the hostile opinions in the studies cited by Drs. Rosenberg and Dahhan formed the basis for their conclusion that Collins's disability was too severe to have been caused by coal dust exposure. Thus,

the studies were integral to the physicians' analyses, and the ALJ was justified in discrediting them for hostility to the Act. *See Midland Coal Co. v. Dir., Office Workers' Comp. Programs*, 358 F.3d 486, 492 (7th Cir. 2004) (upholding an ALJ's discrediting of a physician's opinion where the physician formed his opinion in part by "referenc[ing] parts of the medical literature that deny that coal dust exposure can ever cause pneumoconiosis . . . .").

IV.

The ALJ also accorded less weight to the opinions of Drs. Dahhan and Rosenberg because they found that Collins "responded" to bronchodilator treatment even though Collins's overall pulmonary function actually worsened after treatment. Additionally, the ALJ credited Collins's testimony that the inhalers and breathing machine did not help him breathe better. Mountain Clay, however, claims that the ALJ erred in this determination because he overlooked the improved results in the $FEV_1$, FVC, and MVV after the administration of bronchodilator treatment.

Reviewing the ALJ's decision, as we must, under the substantial evidence standard, the ALJ's decision is rational, and it is not the place of this Court to "reweigh the evidence or make credibility determinations." *Adams*, 816 F.2d at 1120. The decrease in overall pulmonary function experienced by Collins when exposed to bronchodilator treatment constitutes substantial evidence that Collins did not actually "respond" to such treatment. Thus, the ALJ did not err in finding the opinions of Drs. Dahhan and Rosenberg less credible based on their conclusion that Collins did not have pneumoconiosis in part because he "responded" to bronchodilator treatment.

V.

Mountain Clay additionally argues that the ALJ erred in finding that Collins suffered from legal pneumoconiosis based on Dr. Baker's opinion because his opinion was neither well-reasoned nor well-documented. However, Mountain Clay's claim amounts to an argument about credibility over which this Court has no power of review. *Jericol Mining, Inc. v. Napier*, 301 F.3d 703, 712 (6th Cir. 2002).

Dr. Baker found that Collins suffered from legal pneumoconiosis. The definition of legal pneumoconiosis is much broader than that of clinical pneumoconiosis. Legal pneumoconiosis includes "any chronic lung disease or impairment and its sequelae arising out of coal mine employment." 20 C.F.R. § 718.201(a)(2); *see also Cornett v. Benham Coal, Inc.*, 227 F.3d 569, 575 (6th Cir. 2000). The determination of the existence of pneumoconiosis may be based on "objective medical evidence such as blood-gas studies, electrocardiograms, pulmonary function studies, physical performance test, physical examination, and medical and work histories." 20 C.F.R. § 718.202(a)(4); *Cornett*, 227 F.3d at 575. Such findings must be "supported by a reasoned medical opinion." 20 C.F.R. § 718.202(a)(4).

In crediting Dr. Baker's determination that Collins suffered from legal pneumoconiosis, the ALJ noted that Dr. Baker considered Collins's history of coal mine employment and smoking, his medical history, symptoms, x-ray, pulmonary function study, blood gas study, and EKG. Dr. Baker's diagnosis of legal pneumoconiosis was based on "the x-ray reading, the miner's length of exposure to coal dust, and Dr. Baker's personal examination." Additionally, the ALJ emphasized that he assigned "significant probative weight to Dr. Baker's opinion" because "his opinion is reasoned and

he is an expert in the field of pulmonary disease."

Because the ALJ's crediting of Dr. Baker's opinion is not inconsistent with the applicable law, this Court must review the ALJ's finding under a substantial evidence standard. As Dr. Baker not only examined Collins's x-ray but also evaluated Collins's history, symptoms, pulmonary function study, blood gas study, and electrocardiogram, it was not unreasonable for the ALJ to have relied upon Dr. Baker's findings. Although another factfinder might have decided differently, "an appellate tribunal may not reweigh the evidence or make credibility determinations." *Adams*, 816 F.2d at 1120. Because the ALJ's determination is rational and supported by substantial evidence, this Court is bound to uphold the ALJ's credibility determination.

## VI.

Finally, Mountain Clay argues that the ALJ's finding that Collins's disability is due to pneumoconiosis is not supported by substantial evidence and is not consistent with the law. A miner is considered totally disabled "due to" pneumoconiosis if his pneumoconiosis is a "substantially contributing cause of the miner's total disabling respiratory or pulmonary impairment." 20 C.F.R. § 718.204(c). Pneumoconiosis is a "substantially contributing cause" of the miner's disability if it: "(i) Has a material adverse effect on the miner's respiratory or pulmonary condition; or (ii) Materially worsens a totally disabling respiratory or pulmonary impairment which is caused by a disease or exposure unrelated to coal mine employment." *Id.* Such determinations of causation "shall be established by means of a physician's documented and reasoned medical report." 20 C.F.R. § 718.204(c)(2).

The ALJ based his conclusion on Dr. Baker's opinion and accorded less probative weight to the opinions of Drs. Dahhan and Rosenberg because they failed to find the existence of pneumoconiosis. Mountain Clay quarrels with the ALJ's credibility determination regarding Dr. Baker's opinion because, Mountain Clay argues, there was insufficient evidentiary support for his opinion. However, the court does not have the power of review over the question of whether a physician's opinion was sufficiently reasoned or was supported by sufficient evidence. *Wolf Creek Collieries v. Dir., OWCP*, 298 F.3d 511, 522 (6th Cir. 2002) (refusing to address the sufficiency of evidence supporting a physician's determination that the Claimant's disability was due to pneumoconiosis, stating that "such a determination would require us to address [the physician's] credibility, which would exceed our limited scope of review over the Board's decisions."); *Jericol Mining, Inc. v. Napier*, 301 F.3d 703, 712 (6th Cir. 2002); *Adams*, 816 F.2d at 1119 n.1.

Mountain Clay also claims that the ALJ was in error because he accorded less weight to the opinions of Drs. Rosenberg and Dahhan in determining the causation of Collins's disability.[2] Assigning less probative weight to the opinions of Drs. Dahhan and Rosenberg on the issue of causation, however, is proper because Drs. Dahhan and Rosenberg did not find the existence of pneumoconiosis. As a matter of law, where a physician does not find the existence of pneumoconiosis, the ALJ may, in determining causation issues, accord less weight to that opinion. *Skukan v. Consolidated Coal Co.*, 993 F.2d 1228, 1233 (6th Cir. 1993), vacated sub nom., *Consolidations Coal Co. v. Skukan*, 512 U.S. 1231 (1994), rev'd on other grounds, *Skukan v.*

---

[2]Mountain Clay asserts that the ALJ "selectively analyzed the evidence and impermissibly substituted his opinion for that of the medical experts." However, Mountain Clay does not point to any evidence that the ALJ actually substituted his opinion for that of other medical experts.

*Consolidated Coal Co.*, 46 F.3d 15 (6th Cir. 1995); *Scott v. Mason Coal Co.*, 289 F.3d 263, 269 (4th

Cir. 2002).

Mountain Clay's difference of opinion about the cause of Collins's disability, as the Board

correctly noted, boils down to "a quarrel with the [ALJ's] credibility determinations. But this court

is required to defer to the [ALJ's] assessment of the physicians' credibility." Because Mountain

Clay's disputes the ALJ's finding of credibility, its appeal must fail.


VII.

For the foregoing reasons, we **AFFIRM** the Board's decision to uphold the award of benefits

to Collins.