NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0140n.06

No. 09-4589

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 07, 2012
LEONARD GREEN, Clerk

ISLAND CREEK COAL COMPANY,    )
                                    )
     Petitioner,                 )
                                      )
v.                                      )  ON APPEAL FROM THE BENEFITS
                                      )  REVIEW BOARD, UNITED STATES
HAROLD CALLOWAY,             )  DEPARTMENT OF LABOR
                                      )
     Respondent.               )
                                      )

Before: MOORE, GIBBONS, and MCKEAGUE, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Island Creek Coal Company ("Island Creek")
appeals a decision of the Department of Labor Benefits Review Board ("BRB") affirming an
Administrative Law Judge's ("ALJ") decision to award lifetime disability benefits to Harold
Calloway pursuant to the provisions of the Black Lung Benefits Act, 30 U.S.C. §§ 901–45. Island
Creek argues that the ALJ incorrectly applied a presumption that relieved Calloway of his burden
to prove the presence of legal pneumoconiosis and causation; erred in weighing the medical
evidence; and failed to apply the appropriate statutory causation standard. For the reasons that
follow, we reverse the decision of the BRB and remand the case for further proceedings in accord
with this opinion.

I.

Calloway worked for Island Creek in the coal mines for nineteen and a half years. He testified that, after working a shift, he was covered in and spat up coal dust. After he left work in 1992 after being injured in a rock fall, his health declined. Now, he coughs a lot and has problems with wheezing. He must use oxygen several times a day and becomes short of breath after walking only fifty feet or climbing a few steps. He has difficulty sleeping and often needs to sleep in a chair at night. Calloway takes medication to treat these symptoms.

Calloway filed for benefits in 1994, but his claim was denied by the Office of Workers' Compensation Programs ("OWCP"). He filed again in 1998, and the OWCP again denied his claim. Calloway appealed that decision, but although an administrator at OWCP initially granted his appeal, an ALJ denied benefits. On December 17, 2001, Calloway filed his third claim, which the OWCP granted on June 9, 2003. Calloway's case eventually came before another ALJ on May 23, 2007. The second ALJ issued a Decision and Order awarding benefits on January 29, 2009.

The ALJ first summarized the new evidence that Calloway had offered. Then, after setting out the legal standard, the ALJ found that Calloway suffers from legal pneumoconiosis,[1] which was

---

[1]Clinical pneumoconiosis consists of the diseases recognized as pneumoconiosis by the medical community. Legal pneumoconiosis is a regulatory standard which comprises "any chronic lung disease and its sequelae arising out of coal mine employment." 20 C.F.R. §718.201(a)(2). A disease "arising out of coal mine employment" includes "any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201(b). Legal pneumoconiosis is in the regulations because the Department of Labor decided "to include chronic obstructive pulmonary disease ("COPD") in the definition of pneumoconiosis to the extent it is shown to have arisen from

caused by his work in the coal mine; that Calloway is totally disabled; and that his total disability was caused by his pneumoconiosis.

Island Creek appealed the ALJ's decision to the BRB. The BRB issued an unpublished opinion in November 2009 affirming the ALJ in whole because the decision was rational, supported by substantial evidence, and in accordance with applicable law.

Island Creek now appeals that decision.

II.

This court affirms the BRB unless it committed legal error or exceeded its scope of review of the ALJ's findings. *Tenn. Consol. Coal Co. v. Kirk*, 264 F.3d 602, 606 (6th Cir. 2001); *Glen Coal Co. v. Seals*, 147 F.3d 502, 510 (6th Cir. 1998). An ALJ's findings are affirmed by the BRB if they are supported by substantial evidence in the record and are in accordance with the applicable law. *Glen Coal*, 147 F.3d at 510. Because the BRB affirmed the ALJ's decision as based on substantial evidence, it did not exceed the statutory scope of its review. Our review of the BRB therefore depends on whether substantial evidence supported the ALJ's decision and whether either the ALJ

---

coal mine employment." Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, as Amended, 64 Fed. Reg. 79,920, 79,923 (Dec. 20, 2000) (codified at 20 C.F.R. pt. 718). As the Department explained,

> [T]he prevailing view of the medical community and the substantial weight of the medical and scientific literature supports the conclusion that exposure to coal dust may cause [COPD]. Each miner must therefore be given the opportunity to prove that his obstructive lung disease arose out of his coal mine employment and constituted "legal" pneumoconiosis.

*Id.* The legal pneumoconiosis regulatory standard came into existence in December 2000, after Calloway had filed his earlier claims for benefits.

or the BRB committed legal error. *See id.* ("The court of appeals' review of the Benefits Review Board is then 'limited to a determination whether the outcome below is supported by substantial evidence and was reached in conformance with applicable law.'" (quoting *York v. Benefits Review Bd.*, 819 F.2d 134, 136 (6th Cir. 1987))).

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Cross Mountain Coal, Inc. v. Ward*, 93 F.3d 211, 216 (6th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). We do not "reweigh the evidence or substitute our judgment for that of the ALJ." *Tenn. Consol.*, 264 F.3d at 606. An ALJ's conclusions will be affirmed if they are supported by substantial evidence, "'even if the facts permit an alternative conclusion.'" *Id.* (quoting *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)).

## III.

## A.

Island Creek makes three arguments. First, it asserts that the ALJ applied a presumption that coal mine dust contributed to the development of Calloway's chronic obstructive pulmonary disease ("COPD"), thus relieving Calloway of his proper burden of proof. Island Creek asserts that federal regulations do not create such a presumption.

There is no indication from the ALJ's opinion that he applied such a presumption, and Island Creek cites no portion of the ALJ's opinion referring to such a presumption. In fact, Island Creek does not refer at all to the references to a presumption included in the ALJ's opinion, found on pages 19 and 23 of the opinion. One relates to the rebuttable presumption arising under

4

C.F.R. § 718.203(b) under which a miner suffering from pneumoconiosis and employed ten years or more in the mines is presumed to have pneumoconiosis arising from employment, and the others describe the presumptions of C.F.R. §§ 718.304–718.306, which the ALJ noted were inapplicable. Neither of these presumptions is the one about which Island Creek complains. Moreover, Island Creek does not point to any language in the ALJ's opinion that might imply use of such a presumption, even if the word "presumption" is not used.

When Island Creek's argument is examined more closely, it is clear that it focuses not on application of an improper presumption but rather on disagreement with the ALJ's evaluation of the evidence. Island Creek's argument about a presumption in actuality is not a legal argument about whether the ALJ held Calloway to a proper standard and burden of proof but simply an evidentiary argument that is best considered as part of the argument we next consider, which addresses the evidence before the ALJ in a more straightforward manner.

B.

Island Creek also argues that the ALJ erred in weighing the medical evidence and resolving conflicts within the evidence, calling both the ALJ's reasoning and that of the doctors he credited "irrational." In order to assess this argument, we must examine the medical evidence presented and the ALJ's reasoning and conclusions with respect to the medical opinions offered.

The ALJ decision considered evidence from four physicians, who offered various opinions about the causes of Calloway's medical maladies.

Calloway relied on Dr. Manoj Majmudar and Dr. Glen Baker. Majmudar diagnosed Calloway with chronic obstructive pulmonary disease, chronic bronchitis, and pneumoconiosis.

5

Majmudar testified that twenty years in the coal mines is sufficient to develop pneumoconiosis and that Calloway's smoking was "not considered very, very significant"; thus Majmudar concluded that coal mine dust inhalation "is the predominate cause of his pneumoconiosis and COPD" which have rendered Calloway completely disabled. Baker diagnosed Calloway with coal workers pneumoconiosis, COPD, bronchitis, and arterial hypoxemia, which he attributed to coal dust exposure, smoking, and, potentially, asthma. Baker found that Calloway has chronic lung disease caused by his coal mine employment, which indicates the presence of pneumoconiosis. Baker acknowledged Calloway's smoking history but found that of people who smoke at Calloway's rate, "only 15% of [them] . . . have any problems whatsoever with their lungs." Baker concluded that Calloway's "primary problem is probably that of asthma, though there may be some contribution from his coal dust exposure as well."

Island Creek Coal Company used examinations from Dr. Lawrence Repsher and Dr. Jeffrey Selby. Repsher diagnosed Calloway with COPD but not pneumoconiosis. Repsher found that Calloway's medical problems were serious but that they stemmed primarily from smoking and asthma. Repsher found that Calloway was exposed to coal mine dust, but he stated that Calloway's exposure was less than the average worker. Though Repsher "could not absolutely rule out legal [coal workers' pneumoconiosis] because [Calloway] does have COPD," he concluded that "the overwhelming probability is that all of the individually testable abnormalities of his pulmonary function are due to his cigarette smoking" with "no significant impairment related to the inhalation of coal dust." Selby found that Calloway does not have any pulmonary problems as a result of coal dust exposure; rather, Calloway has severe obstructive lung defect as a result of asthma and

emphysema from cigarette smoke. Selby stated that Calloway would have the same problems even if he had never set foot in a mine and that working in the coal mine had improved Calloway's health because he was not permitted to smoke while in the mine. Selby admitted that Calloway's employment history could cause pneumoconiosis, but he concluded that cigarette smoking was the primary cause of Calloway's health problems. Significantly, Selby found that Calloway smoked nearly thirty packs of cigarettes a month, a significantly higher estimate than those of the other physicians. However, Selby also said that a lower amount of smoking—even ten to fifteen packs per month—would still be enough to cause Calloway's disability.

The ALJ resolved the smoking history disparity by weighing the reports of all the physicians and the testimony of Calloway. Although there was "some inconsistency regarding Claimant's smoking history," because all reports indicated a half pack per day or a half pack to one pack per day, the ALJ credited Calloway's testimony and found a fourteen pack per month history that ended in 2003.[2]

The ALJ considered next whether the record showed that Calloway suffered from pneumoconiosis. The ALJ found that Calloway had failed to establish *clinical* pneumoconiosis—the diseases recognized as pneumoconiosis by the medical community. But the ALJ found that Calloway had met his burden for establishing *legal* pneumoconiosis. *See* 20 C.F.R. § 718.202(a)(4).

---

[2]The fourteen pack per month history found by the ALJ in connection with this claim is significantly less than the twenty-six pack per month history found by the ALJ who heard Calloway's earlier claim. Calloway testified both times that he smoked half a pack per day.

The ALJ found Majmudar's report and findings well-documented and well-reasoned. He accorded Majmudar less weight than he would have otherwise because Majmudar had found only a ten and a half pack per month history, but he found Majmudar's diagnosis of pneumoconiosis probative. The ALJ found Baker's report "equivocal" because Baker hedged his diagnosis between asthma and pneumoconiosis; Baker's report was well-reasoned to support pneumoconiosis but not worthy of the same weight as Majmudar's opinion. The ALJ found Repsher's opinion not well-reasoned and accorded it less weight than the opinions of Majmudar and Baker because Repsher had not explained why he had eliminated coal mine dust as a cause of Calloway's COPD and because his deposition testimony was inconsistent—at one point he admitted coal mine dust might be a possible cause, but later he insisted that only smoking had caused Calloway's health problems. Finally, the ALJ discounted Selby's findings because Selby never explained why he ruled out coal dust exposure as a cause of Calloway's COPD. The ALJ concluded, "[T]here is one report with probative weight and one report with less weight that diagnosed legal pneumoconiosis and two reports with less weight that found no pneumoconiosis at all. Therefore, I find that Claimant has proven by a preponderance of the evidence that he suffers from pneumoconiosis under [20 C.F.R.] § 718.202(a)(4)."

After finding that Calloway suffers from pneumoconiosis,[3] the ALJ turned to the issue of causation. A miner who suffers from pneumoconiosis and worked in coal mines for ten or more years enjoys a rebuttable presumption that the pneumoconiosis arose out of the coal mining

---

[3]Unless otherwise specified, from this point any references to "pneumoconiosis" refer to "legal pneumoconiosis."

employment. 20 C.F.R. § 718.203(b). The ALJ found that, because Calloway had worked in the mines for nineteen years and Island Creek had offered no rebuttal evidence, Calloway enjoys the presumption. Therefore Calloway's legal pneumoconiosis was caused by his work in the coal mine.

The ALJ then found that Calloway is totally disabled. The ALJ noted that, because Calloway's pulmonary function studies were below the values listed in the regulatory tables, Calloway is totally disabled under 20 C.F.R. § 718.204(b)(2)(i). Additionally, the ALJ found Calloway totally disabled under section 718.204(b)(2)(iv), because all four doctors found that Calloway could not engage in his usual coal mine employment or comparable gainful employment.

Finally, the ALJ considered whether Calloway's total disability was caused by his pneumoconiosis. The regulations require the pneumoconiosis to be a "substantially contributing cause" of the miner's respiratory ailment in order for the total disability to be caused by it. Citing 20 C.F.R. §§ 718.204(c)(1)(i) and (ii), the ALJ noted that pneumoconiosis is considered a substantially contributing cause if it "has a material effect on the miner's respiratory or pulmonary condition or if it materially worsens a totally disabling respiratory or pulmonary impairment which is caused by a disease or exposure unrelated to coal mine employment."

The ALJ reweighed the evidence submitted by the physicians and found that Calloway had proved by a preponderance of the evidence that "his total disability was due in part to [his] pneumoconiosis." The ALJ noted that Majmudar found "coal mine dust is the *predominate* cause of his pneumoconiosis and COPD." Baker attributed Calloway's pneumoconiosis to coal mine dust, expressly denied the impact of smoking on Calloway's respiratory ailments, and found that pneumoconiosis was partly to blame. Repsher could not rule out coal mine dust and

pneumoconiosis, and his opinion was less persuasive because of his failure to account for Calloway's coal mine work. Selby's opinion failed to address the coal dust exposure and did not offer a reasoned opinion for why smoking alone is to blame for Calloway's illnesses.

Because the ALJ found Calloway had met his burden on all counts, he awarded Calloway disability benefits.

Reviewing the ALJ's decision for substantial evidence, we find that the record does not support Island Creek's assertions. Testimony showed that Calloway was covered in black dust at the end of the day and spat up black coal dust. Both Calloway and Island Creek's physicians agreed that Calloway suffered from COPD, and three of the four physicians who testified found that the inhalation of coal dust either did cause or could have caused the COPD. Thus the ALJ had substantial evidence to support a conclusion of legal pneumoconiosis. Because all physicians agreed on Calloway's disability, once the ALJ had substantial evidence of pneumoconiosis caused by coal mine dust, he also had substantial evidence the pneumoconiosis caused his disability.

The primary counter-argument made by the company's physicians was that smoking, not coal dust, had caused Calloway's difficulties. Calloway's physicians, Doctors Manoj Majmudar and Glen Baker, found that coal dust inhalation had caused his pneumoconiosis, but Island Creek's physicians, Doctors Lawrence Repsher and Jeffrey Selby, found that Calloway's medical maladies stemmed primarily from smoking and asthma. The ALJ, however, had good reason to prefer the opinions of Majmudar and Baker to those of Repsher and Selby. First, Majmudar and Baker both explained that the scientific literature showed smoking was highly unlikely to have caused Calloway's problems. Repsher and Selby did not similarly explain why coal dust was not to blame. In fact, Repsher

conceded that coal dust inhalation might be a cause of Calloway's health problems. Because Majmudar's and Baker's opinions were more comprehensive than Repsher's and Selby's, it was not unreasonable for the ALJ to give their opinions more weight. Second, Selby estimated a smoking history for Calloway that was more than twice that which the other physicians noted and to which Calloway had testified. Because Selby—the only physician to unequivocally blame smoking for Calloway's health problems—made factual findings so inconsistent from the others, it was not unreasonable for the ALJ to distrust his opinion. Third, the ALJ had testimony from Selby that in fifteen years of making diagnoses for the coal company, he could not offer *one* example of a case where he diagnosed disability from breathing coal dust instead of smoking. For a doctor to diagnose miners for fifteen years yet not find a single miner disabled from coal dust strains credibility. The ALJ might rightfully have distrusted Selby's opinion. In light of such evidence it was not "arbitrary and capricious" or "irrational" for the ALJ to credit Majmudar and Baker's opinions over Repsher and Selby's.

Having determined that Calloway had legal pneumoconiosis, the ALJ relied on regulations to establish a rebuttable presumption that the pneumoconiosis was caused by Calloway's work in the coal mines. Though the ALJ did relieve Calloway of the burden of disease causation, such relief is called for in the regulations. *See* 20 C.F.R. § 718.203(b). Moreover, Repsher and Selby did not rebut the presumption by explaining why coal dust did not cause Calloway's pneumoconiosis—Repsher in fact conceded it might be a cause.

Island Creek also asserts that the ALJ failed to resolve considerable and material conflicts in the evidence as required by the Administrative Procedure Act. *See* 5 U.S.C. § 557(c)(3)(A). In

11

connection with this argument, Island Creek says that Majmudar and Baker's opinions are "irrational and not supported by substantial evidence in the record, and cannot carry the claimant's burden of proof." To the extent that this assertion mirrors Island Creek's earlier argument that the ALJ improperly shifted the burden from Calloway, this argument has already been addressed above.

Island Creek argues that there are flaws in the Majmudar and Baker opinions. For example, the ALJ rejected Majmudar's x-ray diagnosis, so Island Creek wonders how he could then trust Majmudar's overall diagnosis. But the ALJ's rejection of the x-ray evinces the deliberateness with which he examined the record. Majmudar's opinion was based on many factors besides the x-ray, and Majmudar's conclusion was supported by Baker and conceded as a possibility by Repsher. With three doctors testifying to likely or possible pneumoconiosis, the ALJ's decision was supported by substantial evidence. The ALJ summarized and considered the testimony, opinions, and radiographic evidence of all four physicians; explained why he afforded greater or lesser weight to various opinions; weighed the evidence; and made a determination. To say that he failed to adequately weigh all material evidence of the physicians' opinions is belied by the record.

Island Creek also argues that the second ALJ failed to weigh discrepancies in Calloway's smoking history. Island Creek notes the physicians' different estimates of Calloway's smoking history and argues that the second ALJ was bound by 20 C.F.R. § 725.309(d)(1) to follow the first ALJ's previous finding that Calloway had a twenty-six pack per month smoking history.

Island Creek's citation to section 725.309(d)(1) is meritless. The regulation provides that "[a]ny evidence submitted in connection with any prior claim shall be made a part of the record in the subsequent claim." The regulation does not require that two ALJs reach the same conclusions;

12

it merely requires that the prior evidence be made part of the record. The prior ALJ had substantially the same evidence but preferred Selby's testimony to Calloway's and that of other physicians. The ALJ in this case had Selby's testimony but preferred the opinion of Calloway and the other three physicians. This was not error. Because the second ALJ made the prior evidence part of the record, he fulfilled his regulatory obligation. The fact that he gave greater weight to the sworn testimony of four people than to the testimony of one in no way evinces a failure to resolve material conflicts; rather, it shows careful resolution of disparate facts.

In a related argument, Island Creek maintains that the prior ALJ's determination of Calloway's smoking history may not be set aside. Citing comments to the regulations, Island Creek states that a subsequent claim must be denied if it is based on findings from the previous adjudication that are "not subject to change." *See* 65 Fed. Reg. 79,972–73. The regulations offer the example of a finding that a miner never worked in a mine as an example of an adjudication not subject to change. 20 C.F.R. § 725.309(d)(2). Island Creek contends that Calloway's smoking history is similarly not subject to change.

Island Creek's contention is directly contrary to the regulations. Section 725.309 requires a miner raising a subsequent claim to "meet at least one of the criteria that he or she did not meet previously." *Id*. at § 725.309(d)(2). If the change in entitlement relates to a miner's physical condition, the subsequent claim can be approved if new evidence establishes the applicable condition. *Id*. at § 725.309(d)(3). Once the applicant demonstrates a change in physical condition, no findings from the prior claim are binding in adjudicating the second claim. *Id*. at § 725.309(d)(4). Here the ALJ determined that new evidence showed Calloway's physical condition had changed so

13

that he now had legal pneumoconiosis. Having found such a change, the second ALJ was not bound by the prior ALJ's finding. Moreover, the extent to which smoking caused Calloway's disability is not a matter completely "not subject to change" in the same way his never having been in the mine would be. Calloway's health can change in ways that his work history cannot. We therefore find this argument to be without merit.

The record shows that the ALJ weighed all the evidence and resolved material conflicts. His decision is supported by substantial evidence.

C.

Finally, Island Creek asserts that the ALJ erred in requiring that Calloway show that his pneumoconiosis was only a "contributing cause" to his total disability, rather than applying the higher regulatory requirement of showing pneumoconiosis was a "substantially contributing cause."

The regulations in question were changed in 2000 to require that pneumoconiosis be "a substantially contributing cause of the miner's totally disabling respiratory or pulmonary impairment" in order for a miner to show that he is totally disabled due to pneumoconiosis. 20 C.F.R. § 718.204(c)(1) (2000). *See also* Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969 as Amended, 65 Fed. Reg. 79920, 79946 (Dec. 20, 2000) (discussing amendment). Island Creek protests that an earlier holding of this circuit requiring that pneumoconiosis be only more than a "de minimis or infinitesimal contribution" to the miner's total disability is contrary to the current regulations. *See Peabody Coal Co. v. Smith*, 127 F.3d 504, 506–07 (6th Cir. 1997). Because the ALJ cited *Peabody* and found that pneumoconiosis

"contributed, at least in part, to [Calloway's] total disability," Island Creek argues that the ALJ acted contrary to the regulatory requirement and applied a standard that is too low. We agree.

*Peabody,* which was decided prior to the amendment, explicitly rejected the "substantial contributing cause" standard. 127 F.3d at 507 ("Moreover, we believe that the substantial contributing cause standard adopted by the Third and Eleventh Circuits places an inappropriately heavy burden on the miners that is inconsistent with [a prior Sixth Circuit case]."). Instead, the *Peabody* court adopted a standard in which a miner must "affirmatively establish that pneumoconiosis is a contributing cause of some discernable consequence"—*i.e.*, provide more than a *de minimis* contribution—to the miner's totally disabling respiratory impairment. *Id*. It is still true that pneumoconiosis must be *at least* more than a *de minimis* contribution to the miner's total disability, but to the extent *Peabody* permits a miner to prevail by showing pneumoconiosis by anything less than a "substantial contributing cause," the case is contrary to the current regulations and is no longer good law.

Although the ALJ did initially cite 20 C.F.R. § 718.204(c) and the correct standard, he never again referenced the "substantially contributing cause" language. Instead, the ALJ appears to have applied a less rigorous standard in which "a claimant must affirmatively establish only that his totally disabling respiratory impairment . . . was due—at least in part—to his pneumoconiosis." The ALJ repeatedly referenced this less demanding standard when performing his analysis of the doctors' evaluations. For example, when summarizing his assessment, the ALJ stated that "Drs. Majmudar and Baker both opined that Claimant's coal mine employment contributed, *at least in part*, to his total disability." (emphasis added)

15

The ALJ never found that Calloway's coal mine employment or his pneumoconiosis was a "substantially contributing cause" of his total disability. Rather, the ALJ very clearly stated that "I find that Claimant has established by a preponderance of the evidence that his total disability was due in part to his pneumoconiosis." This conclusion clearly fails to use the correct standard in which the claimant's pneumoconiosis must be a *substantially* contributing cause of his or her total disability. Accordingly, remand is necessary in order to provide the ALJ with an opportunity to assess the case using the proper standard.

IV.

For the foregoing reasons, we reverse the decision of the BRB and remand the case for further proceedings in accord with this opinion.