**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 19a0053n.06

Case No. 18-3367

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>SOUTHERN OHIO COAL COMPANY;<br>EAST COAST RISK MANAGEMENT,<br><br>    Petitioners,<br><br>v.<br><br>DIRECTOR, OFFICE OF WORKERS'<br>COMPENSATION PROGRAMS; HYLE E.<br>JOHNSTON; UNITED STATES<br>DEPARTMENT OF LABOR,<br><br>    Respondents.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>FILED<br>Jan 30, 2019<br>DEBORAH S. HUNT, Clerk<br><br>ON PETITION FOR REVIEW OF<br>AN ORDER OF THE BENEFITS<br>REVIEW BOARD, UNITED<br>STATES DEPARTMENT OF<br>LABOR</td></tr>
</table>

BEFORE: SILER, COOK, and BUSH, Circuit Judges.

COOK, Circuit Judge. Southern Ohio Coal Company and third-party administrator, East Coast Risk Management, petition for review of the Benefits Review Board's decision affirming the Administrative Law Judge's award of benefits to Hyle E. Johnston under the Black Lung Benefits Act, 30 U.S.C. §§ 901–45. Because the Board applied the correct legal standard and substantial evidence supports the ALJ's conclusion, we DENY the petition.

### I.

#### A. Black Lung Benefits Act

The Black Lung Benefits Act affords benefits to coal miners who are totally disabled by pneumoconiosis, defined as "a chronic dust disease of the lung . . . ." 30 U.S.C. § 902(b). To

establish entitlement to benefits under the Act, a "claimant must prove by a preponderance of the evidence that (1) he has pneumoconiosis, (2) his pneumoconiosis arose in whole or in part out of his coal mine employment, (3) he is totally disabled, and (4) the total disability is due to pneumoconiosis." *Cent. Ohio Coal Co. v. Dir., Office of Workers' Comp. Programs*, 762 F.3d 483, 486 (6th Cir. 2014).

### B. Procedural History

Johnston worked as a coal miner for Southern Ohio for some fourteen years. He smoked cigarettes for even longer: a pack a day for thirty-two years. Eventually, Johnston filed a claim for benefits under the Act, which the District Director awarded. Southern Ohio then appealed that award, prompting referral to the Office of Administrative Law Judges for a hearing. At that hearing, both sides presented evidence. That evidence included chest x-rays, pulmonary function studies, arterial blood gas studies, plus expert opinions from two doctors. The ALJ awarded benefits, the employer appealed, and the Benefits Review Board affirmed. This petition for review followed.

### II.

We review the Board's legal conclusions de novo. *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1068 (6th Cir. 2013). Though "we must affirm the Board's decision unless the Board has committed legal error or exceeded its scope of review, our review actually focuses on whether the ALJ's decision is supported by substantial evidence." *Island Creek Ky. Mining v. Ramage*, 737 F.3d 1050, 1056 (6th Cir. 2013). "'Substantial evidence' means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Kolesar v. Youghiogheny & Ohio Coal Co.*, 760 F.2d 728, 729 (6th Cir. 1985) (quoting *Richardson v. Perales*, 402 U.S. 389,

401 (1971)). To satisfy this standard, "the ALJ must adequately explain why he weighed the evidence as he did." *Ramage*, 737 F.3d at 1056.

## III.

Southern Ohio alleges two errors: (1) the Board employed an incorrect, more lenient causation standard, and (2) no substantial evidence supported the ALJ's conclusion that Johnston's chronic obstructive pulmonary disease (COPD) caused his total disability.

### A. Causation Standard

Southern Ohio first argues that the Board erred by applying a less rigorous "in part" standard when evaluating the causal relationship between Johnston's pneumoconiosis and his total disability. To prove disability causation, Johnston needed a doctor to opine that his pneumoconiosis was a "substantially contributing cause" of his total disability. 20 C.F.R. § 718.204(c); *Arch on the Green, Inc. v. Groves*, 761 F.3d 594, 599 (6th Cir. 2014). Pneumoconiosis is a "substantially contributing cause" of a miner's disability if it: "(i) [h]as a material adverse effect on the miner's respiratory or pulmonary condition; or (ii) [m]aterially worsens a totally disabling respiratory or pulmonary impairment which is caused by a disease or exposure unrelated to coal mine employment." 20 C.F.R. § 718.204(c)(1); *see Brandywine Explosives & Supply v. Dir., Office of Workers' Comp. Programs*, 790 F.3d 657, 661–62 (6th Cir. 2015).

The ALJ's opinion started by acknowledging the correct standard—that Johnston needed to establish that "pneumoconiosis [was] a substantially contributing cause to his disability." The opinion went on to review the two competing medical opinions, one from a doctor retained by the employer, Dr. Grodner, and one by the doctor retained by Johnston, Dr. Feicht. In his opinion, the

ALJ ultimately discredited Grodner's opinion, finding that Feicht's opinion satisfied the standard required for an award.

The Board agreed. In reviewing the ALJ's decision, the Board concluded that the ALJ correctly applied the "substantially contributing cause" standard. The Board found that Johnston's expert "diagnosed legal pneumoconiosis in the form of COPD due, in significant part, to coal mine dust exposure," and that he "further opined that [Johnston's] COPD is a substantially contributing cause of his disability." Thus, the Board concluded, the ALJ "properly determined that [this] opinion met [Johnston's] burden" on the issue.

To support its contrary argument that the ALJ applied a lesser standard, Southern Ohio cites to *Island Creek Coal Co. v. Calloway*, 460 F. App'x 504 (6th Cir. 2012). There, after initially citing the "substantially contributing cause" standard, the ALJ "never again referenced" it. *Id.* at 512. Instead, he "repeatedly referenced [the] less demanding standard when performing his analysis," and "clearly fail[ed] to use the correct standard" by concluding that the claimant had established that "his total disability was due *in part* to his pneumoconiosis." *Id.* at 513 (emphasis added). And in another case, *Arch on the Green*, the ALJ erred similarly. 761 F.3d at 600–01. After correctly quoting the "substantially contributing cause" language, the ALJ went astray in its opinion, saying that pneumoconiosis must be "more than a *de minim[i]s* or 'infinitesimal' factor in the miner's total disability." *Id.* at 601 (alterations in original) (citation omitted).

Southern Ohio fails to point to where the ALJ here committed a similar misstep. As the company concedes, the ALJ began by correctly articulating the legal standard and never "expressly invoke[d]" the incorrect standard. The Board did the same, relying on Johnston's doctor's unambiguous conclusion "[t]hat coal dust was a significant contributor to the patient's ensuing respiratory injury and disability." Pet'r's App. at 6, 168; *see Cumberland River Coal Co. v. Banks*,

690 F.3d 477, 489–90 (6th Cir. 2012) (holding the substantially contributing cause standard satisfied where one physician concluded that the miner's "'cigarette smoking and his coal mine dust exposure' both contributed to his disabling lung disease"); *Dixie Fuel Co. v. Dir., Office of Workers' Comp. Programs*, 820 F.3d 833, 848 (6th Cir. 2016). With the Board properly applying the substantially contributing cause standard, we find no error of law.

### B. Substantial Evidence

That leaves us with Southern Ohio's other argument that there was not enough evidence to support the ALJ's disability causation conclusion. The company's primary argument takes aim at the ALJ's discounting of Grodner's opinion on disability causation because it failed to diagnose Johnston as having legal pneumoconiosis at all. *See Mountain Clay, Inc. v. Collins*, 256 F. App'x 757, 762 (6th Cir. 2007) ("As a matter of law, where a physician does not find the existence of pneumoconiosis, the ALJ may, in determining causation issues, accord less weight to that opinion."). Though Southern Ohio contends that Dr. Grodner *did* find legal pneumoconiosis, the ALJ rationally concluded that he did not.

For purposes of the Act, there are two forms of pneumoconiosis: clinical and legal. *Brandywine*, 790 F.3d at 661. Legal pneumoconiosis "includes any chronic lung disease or impairment . . . arising out of coal mine employment." *Zurich Am. Ins. Grp. v. Duncan*, 889 F.3d 293, 297 (6th Cir. 2018) (quoting 20 C.F.R. § 718.201(a)(2)). To "aris[e] out of coal mine employment," the pneumoconiosis must be "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201(b); *Cent. Ohio Coal*, 762 F.3d at 486. This burden may be met "by showing that [a miner's] disease was caused 'in part' by coal mine employment." *Arch on the Green*, 761 F.3d at 598–99.

The debate on this point centers on Dr. Grodner's written report and deposition testimony. The company suggests that, though Dr. Grodner's report read that Johnston's "14 years of coal mine work and 50% of that underground would *not* contribute *in any significant degree*" to his COPD, Pet'r's App. at 110 (emphasis added), what Grodner meant was that Johnston's exposure *insignificantly* contributed to his COPD. But Dr. Grodner's report never clearly opined that coal dust exposure contributed to Johnston's COPD. And in deposition, he reiterated his view that "cigarette smoking would be the primary etiologic agent of [Johnston's] COPD," Pet'r's App. at 132, but later waffled on cross-examination. The ALJ took note, explaining that "[a]t various stages Dr. Grodner denied the existence of different causal connections whose presence he conceded at other times and conceded the presence [of all] the elements necessary for a finding of legal pneumoconiosis." Pet'r's App. at 28.

Yes, we have credited as sufficient to establish legal pneumoconiosis some doctors' opinions with little more than Dr. Grodner offered here. *See Arch on the Green*, 761 F.3d at 599 (the miner's pulmonary condition "was caused by both his smoking and his exposure to coal dust"); *Island Creek Coal Co. v. Marcum*, 657 F. App'x 370, 375–78 (6th Cir. 2016) ("coal dust and cigarette smoking contributed to [the miner's] obstructive disease and pneumoconiosis"). Even if we took the company's view, considering Grodner's vague opinion and equivocal testimony, we cannot say that the ALJ irrationally reached the opposite conclusion. *See Morrison v. Tenn. Consol. Coal Co.*, 644 F.3d 473, 478 (6th Cir. 2011) ("[T]he Supreme Court has directed us to uphold decisions that rest within the realm of rationality . . . ."); *Brandywine*, 790 F.3d at 666 (describing doctor's opinion as equivocal and according it less weight where he "acknowledged that the 'number one cause' of the COPD was smoking but maintained, with varying degrees of certainty, that coal-mine dust exposure likely contributed to the disease").

Because the ALJ rationally evaluated Dr. Grodner's medical assessment as denying that Johnston presented with legal pneumoconiosis, he reasonably dismissed as not credible Grodner's opinion on disability causation. An ALJ may afford less weight to a doctor's opinion on disability causation where the doctor, contrary to the ALJ's factual finding, failed to diagnose legal pneumoconiosis. *Ramage*, 737 F.3d at 1062; *see Brandywine*, 790 F.3d at 667 (affirming ALJ's decision to discredit doctors' opinions on causation "because they had not found legal pneumoconiosis"); *Lemarco, Inc. v. Helton*, 559 F. App'x 465, 469 (6th Cir. 2014) (explaining that the company's doctors' opinions "deserved diminished weight because they denied that [claimant] had pneumoconiosis, contrary to the ALJ's earlier finding").

Southern Ohio's secondary argument is that, even if the ALJ properly discounted its medical expert's opinion, Dr. Feicht's opinion was too conclusory to support the ALJ's finding. "In deciding whether the substantial evidence standard is satisfied, we consider whether the ALJ adequately explained the reasons for crediting certain testimony and documentary evidence." *Cent. Ohio Coal*, 762 F.3d at 488–89 (citation omitted). Where the ALJ has, we may not set aside the ALJ's findings even if "we would have taken a different view of the evidence . . . ." *Brandywine*, 790 F.3d at 664 (citation omitted). Here, the ALJ took pains to support his favoring of Dr. Feicht's opinion on disability causation by thoroughly reviewing Feicht's reports and all the medical evidence. Having done so, the choice to credit Feicht's opinion as "sufficiently documented and reasoned is a credibility matter we must leave to the ALJ." *Big Branch*, 737 F.3d at 1073.

**IV.**

Accordingly, we DENY the petition for review.