RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0167p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ARCH ON THE GREEN, INC.; OLD REPUBLIC
INSURANCE COMPANY,

                               Petitioners,

        *v.*

LAWRENCE L. GROVES; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR,

                            *Respondents.*

No. 13-3959

On Petition for Review of a Decision and
Order of the Benefits Review Board.
No. 12-0170 BLA.

Decided and Filed:  July 31, 2014

Before:  ROGERS and COOK, Circuit Judges; MURPHY, District Judge.[*]

---

## COUNSEL

**ON BRIEF:**  Mark E. Solomons, Laura Metcoff Klaus, GREENBERG TRAURIG, LLP, Washington, D.C., for Petitioners.  Brent Yonts, BRENT YONTS, PSC., Greenville, Kentucky, for Respondent Groves.

---

[*]The Honorable Stephen J. Murphy, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

———————————

**OPINION**

———————————

ROGERS, Circuit Judge.   A totally disabled coal miner with Chronic Obstructive Pulmonary Disease (COPD) (and certain other lung diseases not relevant here) must meet two independent causation requirements in order to receive federally-mandated black lung benefits. One relates to causation of the disease by coal mining; the other relates to causation of the total disability by the disease.   Under the applicable regulation, the COPD must first "aris[e] out of coal mine employment" in order to meet the definition of "pneumoconiosis."   Second, the pneumoconiosis must be a "substantial" cause of the total disability.   In view of our limited scope of review, substantial evidence supports the agency's determination in this case that the claimant's COPD arose at least in part out of coal mining employment.   A remand is required, however, with respect to the second determination because the agency does not appear to have applied the correct standard in determining that the claimant's total disability was due to pneumoconiosis.

Groves worked as a strip miner for more than twenty years.   He was also a prodigious smoker who accumulated more than fifty pack-years.[1]   Groves initially filed a claim for benefits in 1998.   An ALJ denied that claim.   Groves filed his current application in 2006.   The ALJ awarded benefits in 2009.   On appeal to the Benefits Review Board, the Board vacated the decision and remanded the case so that the ALJ could provide more detailed explanations.

On remand, the ALJ again granted benefits after a careful review of the medical opinions of several different doctors who evaluated Groves' lung disease.   The ALJ considered Dr. Rasmussen's opinion to be the most reasoned and persuasive.   The most relevant part of Dr. Rasmussen's report reads as follows:

> In Mr. Groves' case, I clearly believe his chronic obstructive lung disease was the consequence of both smoking and mine dust exposure.   His cancer of the

_____

[1]A pack-year is one year of smoking one pack of cigarettes per day.   For example, someone who smokes one pack a day for one year accumulates one pack-year, and someone who smokes two packs a day for one year accumulates two pack-years.

lung is clearly more likely related to his smoking than to his coal mine dust exposure since statistically there is no increase in lung cancer among coal miners compared to the general population. . . .

It is quite difficult in cases with both dust and smoke exposure to apprise the relative importance of each toxin. It is clearly possible that all of Mr. Groves COPD is the result of coal mine dust exposure. It is also entirely possible that all of his impairment is due to cigarette smoking. However, neither scenario is likely to be the case. It seems quite intuitive that most of Mr. Groves impairment is secondary to cigarette smoking and that coal mine dust contributes to a minor degree.

I believe to a reasonable degree of medical certainty that Mr. Groves has at least legal if not clinical pneumoconiosis and that his coal mine dust contributes minimally to his disabling chronic lung disease.

The ALJ also held that Dr. Simpao's opinion supported Dr. Rasmussen's findings. Dr. Simpao acknowledged Groves' long history of smoking and the difficulty of determining the cause of the coal miner's lung disease given that the miner was also a smoker, but ultimately concluded that Groves has pneumoconiosis. Other doctors disagreed, but the ALJ discounted those views. The weight given to the different doctors' opinions is not at issue in this case.

In his written opinion, the ALJ divided his analysis into two parts. The first part discussed whether Groves has legal pneumoconiosis. (The distinction between "clinical pneumoconiosis" and "legal pneumoconiosis" has no effect on this appeal. They each must arise "out of coal mine employment," 20 C.F.R. § 718.201(a)). Summarizing twelve single-spaced pages of analysis, the ALJ wrote:

I credit Drs. Rasmussen's opinion and Dr. Simpao's supporting report in finding that Claimant suffers from COPD, I find that it is caused in part by his exposure to mining. Accordingly, I find that claimant has satisfied his burden of proving legal pneumoconiosis. Legal pneumoconiosis is established partly by the qualifying pulmonary lung function tests that Drs. Rasmussen, Simpao, Schell, and Broudy all agree indicate an obstructive lung disease, and partly by Dr. Rasmussen's and Simpao's well reasoned opinion that coal dust inhalation is more than a *de minim[i]s* factor in Claimant's condition.

The ALJ also explicitly considered "disability causation," *i.e.*, whether Groves' pneumoconiosis contributed to his total disability, in a separate section of his opinion. The ALJ began his analysis by observing that he must "address whether Dr. Rasmussen's opinion, viewed in its entirety, established that pneumoconiosis is a substantially contributing cause of claimant's

total disability."   The ALJ went on to explain that this court has held that this standard is satisfied when the total disability is "'due at least in part' to pneumoconiosis."   Again, the ALJ concluded that Dr. Rasmussen's opinion was better reasoned and was sufficient "to satisfy the *de minim[i]s* standard."

Arch on the Green, the coal company responsible for paying Groves' benefits, appealed to the Board, which affirmed the ALJ's decision.   Like the ALJ, the Board considered both whether Groves has legal pneumoconiosis and whether pneumoconiosis caused his disability.   In analyzing whether Groves carried his burden of establishing legal pneumoconiosis, the Board concluded that "the administrative law judge's finding that Dr. Rasmussen's opinion, supported by Dr. Simpao's report, established legal pneumoconiosis pursuant to 20 C.F.R. § 718.202(a)(4)."   The Board explained that the applicable standard is satisfied if claimant's "coal mine employment contributed 'at least in part' to his pneumoconiosis," *citing Cornett v. Benham Coal, Inc.*, 227 F.3d 569, 576, 22 BLR 2-107, 2-121 (6th Cir. 2000).

Like the ALJ, the Board separately analyzed whether Groves proved disability causation.   The Board held that the ALJ "acted within his discretion in relying on Dr. Rasmussen's opinion, as supported by Dr. Simpao's opinion, to find that claimant established the existence of legal pneumoconiosis at 20 C.F.R. § 718.204(c)."   The Board cited *Tennessee Consolidated Coal Co. v. Kirk*, 264 F.3d 602 (6th Cir. 2001), for the proposition that disability causation is established when "pneumoconiosis [is] a contributing cause of some discernible consequence to claimant's totally disabling respiratory impairment."

Arch appeals these decisions.   Its primary argument is that both the Board and the ALJ applied the wrong standards for causation, both in determining the extent to which Groves' disease arose out of his coal mine employment and the extent to which Groves' total disability is due to pneumoconiosis.   While agreeing that Groves has COPD and that Groves is totally disabled, Arch argues that the proper standards for establishing the causal steps were not applied. In particular, according to Arch, the Board improperly held that Groves had to prove his lung disease was caused only "in part" by his coal mine employment.   Arch also contends that Groves had to show that Groves' pneumoconiosis was a substantially contributing cause of his disability, but the ALJ and Board said that it was sufficient for Groves to show that his disability was

caused "in part" by his pneumoconiosis. Arch argues that Dr. Rasmussen's opinion would not be sufficient under either of the proper standards. Arch also argues that the ALJ erred by referring to the preamble of the black-lung regulations.

The Board and the ALJ applied the correct standard for concluding that Groves' COPD arose out of coal mine employment. While the regulations distinguish between clinical pneumoconiosis (a specified lung disease typically demonstrated by x-ray evidence) and legal pneumoconiosis (a remainder category including COPD), both conditions must "aris[e] out of coal mine employment." 20 C.F.R. § 718.201(a). It is true that "[a] disease 'arising out of coal mine employment'" is in turn defined as "any chronic pulmonary disease or respiratory or pulmonary impairment *significantly related to, or substantially aggravated by*, dust exposure in coal mine employment." *Id*. § 718.201(b) (emphasis added). But § 718.203(a) states, "In order for a claimant to be found eligible for benefits under the Act, it must be determined that the miner's pneumoconiosis arose at least in part out of coal mine employment." 20 C.F.R. § 718.203(a). While it might be argued that the "significantly related to, or substantially aggravated by," standard is both stricter and more clearly applicable in determining the meaning of "arising out of coal mine employment," binding precedent of this court precludes the argument. In *Southard v. Director, Office of Workers' Compensation Programs [OWCP]*, 732 F.2d 66, 72 (6th Cir. 1984), we held that "neither the Act nor § 718.201 requires a claimant to establish what portion of his disease is due to non-mine exposure, and what portion is due to mine exposure. It is enough that the mine exposure is an exposure that contributed to the disease at least in part. *See* 20 C.F.R. § 718.203(a)." In *Southard* we explained that reading § 718.201 as imposing the only causal standard "effectively negates the § 718.203 causation inquiry; a disease would always arise 'at least in part' out of coal mine employment, if it is 'significantly related to or substantially aggravated by,' § 718.201, exposures in coal mine employment."[2]

---

[2] It is true that a subsequent decision of this court, interpreting the second, causation-of-disability requirement, contains some language suggesting that the *Southard* holding might not apply to cases of legal, as opposed to clinical, pneumoconiosis. The language is dictum in two respects: the *Adams* decision did not involve a case of legal pneumoconiosis, and the *Adams* holding dealt not with the first causal issue of whether the disease arose out of coal mine employment, but rather with the second causal issue, discussed below, of whether the total disability was due to the pneumoconiosis. And even as to that issue, as explained below, the *Adams* holding has been superseded by regulation.

Since *Southard*, this court and our sister circuits have referred to both standards interchangeably. *Harman Mining Co. v. Dir., OWCP*, 678 F.3d 305, 309 (4th Cir. 2012); *Cornett v. Benham Coal, Inc.*, 227 F.3d 569, 576 (6th Cir. 2000); *Freeman United Coal Mining Co. v. OWCP*, 957 F.2d 302, 303 (7th Cir. 1992); *Lollar v. Ala. By-Prods. Corp.*, 893 F.2d 1258, 1264 & n.9 (11th Cir. 1990). For example, in *Stomps v. Dir., OWCP*, 816 F.2d 1533, 1535 (11th Cir. 1987), the Eleventh Circuit held that "20 C.F.R. § 718.203(a) states that the proper causal inquiry is whether 'the miner's pneumoconiosis arose at least in part out of coal mine employment'" and that a miner can carry his burden by showing that "he suffers from a pulmonary impairment that is, at least in part, the result of exposure to coal mine dust." *Id*.

In *Cornett*, this court equated the standards in § 718.201 and § 718.203 by explaining that the claimant:

> needed only to show that he has a chronic respiratory and pulmonary impairment "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201. It is sufficient that Cornett's exposure to coal mine employment contributed "at least in part" to his pneumoconiosis. *Southard v. Director, OWCP*, 732 F.2d 66, 71 (6th Cir. 1984). Although neither report eliminated smoking as a cause, both doctors were unequivocal that coal dust exposure aggravated Cornett's pulmonary problems, thus supporting the existence of "legal," although possibly not "medical," pneumoconiosis.

227 F.3d at 576.

Thus, while Groves had to prove that his COPD was "significantly related to, or aggravated by, exposure to coal dust," *Williams*, 338 F.3d at 509, he can satisfy this burden by showing that his disease was caused "in part" by coal mine employment. In this case, Groves has met his burden and presented substantial evidence of his legal pneumoconiosis. Dr. Rasmussen explained that Groves' COPD was caused by both his smoking and his exposure to coal dust. While Dr. Rasmussen said that smoking was the more important cause, "[i]t is sufficient that . . . exposure to coal mine employment contributed 'at least in part' to [a claimant's] pneumoconiosis." *Cornett*, 227 F.3d at 576. Dr. Rasmussen's opinion clearly stated that Groves' coal mine employment contributed to Groves' disease. Therefore, the ALJ and Board did not use an improper standard of proof and did not err in concluding that Groves established that he suffered from legal pneumoconiosis.

However, the ALJ and Board do appear to have erred by not using the "substantially contributing cause" standard for determining that the total disability was due to pneumoconiosis. Under the Black Lung Benefits Act, "[b]enefits are provided . . . for or on behalf of miners who are totally disabled due to pneumoconiosis." 20 C.F.R. § 718.204. A miner cannot receive benefits because of "condition[s] or disease[s]" that "cause[] an independent disability unrelated to the miner's pulmonary or respiratory disability." *Id.* Rather, a miner must show that his pneumoconiosis was "a substantially contributing cause of the miner's totally disabling respiratory or pulmonary impairment." *Id*. In *Island Creek Coal Co. v. Calloway*, 460 F. App'x 504, 512–13 (6th Cir. 2012), we held that an ALJ erred in his disability causation determination because he used an "in part" test rather than the "substantially contributing cause" standard found in 20 C.F.R. 718.204(c). According to the *Island Creek* court, using the "in part" test was wrong because:

> The regulations in question were changed in 2000 to require that pneumoconiosis be "a substantially contributing cause of the miner's totally disabling respiratory or pulmonary impairment" in order for a miner to show that he is totally disabled due to pneumoconiosis. 20 C.F.R. § 718.204(c)(1) (2000). *See also* Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969 as Amended, 65 Fed. Reg. 79920, 79946 (Dec. 20, 2000) (discussing amendment).[3]  Island Creek protests that an earlier holding of this circuit

---

[3]In proposing the revision in its legislative regulation, the agency explained:

> Another significant change is the addition of criteria defining "disability causation," or the degree to which pneumoconiosis must contribute to the miner's disability. Several courts have addressed the issue, and formulated various standards: *Robinson v. Pickands Mather & Co./Leslie Coal Co.*, 914 F.2d 35, 38 (4th Cir. 1990) ("contributing cause"); *Shelton v. Director, OWCP*, 899 F.2d 690, 693 (7th Cir. 1990) (necessary though not sufficient cause); *Lollar v. Alabama By-Products*, 893 F.2d 1258, 1265 (11th Cir. 1990) ("substantial contributing factor"); *Adams v. Director, OWCP*, 886 F.2d 818, 825 (6th Cir. 1989) (disability "due at least in part" to pneumoconiosis); *Bonessa v. United States Steel Corp.*, 884 F.2d 726, 733 (3d Cir. 1989) ("substantial contributor"); *Mangus v. Director, OWCP*, 882 F.2d 1527, 1531 (10th Cir. 1989) (at least a "contributing cause"). Few, if any, practical differences exist in the various expressions of the contribution standard.
>
> The Department has concluded that a single standard should be articulated to eliminate needless confusion and litigation over the relationship between a miner's pneumoconiosis and his disability. The Department has selected the "substantially contributing cause" language because it ensures a tangible and actual contribution; a more demanding standard would be too harsh, especially when many miners suffer from a multiplicity of respiratory problems. Moreover, the "substantially contributing cause" standard mirrors the criteria for proving that pneumoconiosis contributed to the miner's death. *See* 20 CFR 718.205(c). The U.S. Court of Appeals for the Third Circuit found the contribution standard for death a persuasive basis for interpreting the disability standard: "We perceive no reason why the phrase 'total disability due to

requiring that pneumoconiosis be only more than a "de minimis or infinitesimal contribution" to the miner's total disability is contrary to the current regulations. *See Peabody Coal Co. v. Smith,* 127 F.3d 504, 506–07 (6th Cir. 1997). Because the ALJ cited *Peabody* and found that pneumoconiosis "contributed, at least in part, to [Calloway's] total disability," Island Creek argues that the ALJ acted contrary to the regulatory requirement and applied a standard that is too low. We agree.

*Peabody*, which was decided prior to the amendment, explicitly rejected the "substantial contributing cause" standard. 127 F.3d at 507 ("Moreover, we believe that the substantial contributing cause standard adopted by the Third and Eleventh Circuits places an inappropriately heavy burden on the miners that is inconsistent with [a prior Sixth Circuit case]."). Instead, the *Peabody* court adopted a standard in which a miner must "affirmatively establish that pneumoconiosis is a contributing cause of some discernible consequence"—*i.e.,* provide more than a *de minimis* contribution—to the miner's totally disabling respiratory impairment. *Id.* It is still true that pneumoconiosis must be at least more than a *de minimis* contribution to the miner's total disability, but to the extent *Peabody* permits a miner to prevail by showing pneumoconiosis by anything less than a "substantial contributing cause," the case is contrary to the current regulations and is no longer good law.

Although the ALJ did initially cite 20 C.F.R. § 718.204(c) and the correct standard, he never again referenced the "substantially contributing cause" language. Instead, the ALJ appears to have applied a less rigorous standard in which "a claimant must affirmatively establish only that his totally disabling respiratory impairment . . . was due-at least in part-to his pneumoconiosis." The ALJ repeatedly referenced this less demanding standard when performing his analysis of the doctors' evaluations. For example, when summarizing his assessment, the ALJ stated that "Drs. Majmudar and Baker both opined that Claimant's coal mine employment contributed, *at least in part,* to his total disability." (emphasis added)

The ALJ never found that Calloway's coal mine employment or his pneumoconiosis was a "substantially contributing cause" of his total disability. Rather, the ALJ very clearly stated that "I find that Claimant has established by a preponderance of the evidence that his total disability was due in part to his pneumoconiosis." This conclusion clearly fails to use the correct standard in which the claimant's pneumoconiosis must be a *substantially* contributing cause

---

pneumoconiosis' should not track the phrase 'death due to pneumoconiosis.'" *Bonessa*, 884 F.2d at 733.

Regulations implementing the Federal Coal Mine Health and Safety Act of 1969, 62 Fed. Reg. 3338, 3345 (Jan. 22, 1997) (to be codified at 20 C.F.R. pt. 722). While this language cites *Adams*, it also cites cases using the "substantially contributing cause" standard that our circuit rejected in *Peabody*, prior to the revision of the regulation, as too strict.

of his or her total disability. Accordingly, remand is necessary in order to provide the ALJ with an opportunity to assess the case using the proper standard.

*Island Creek*, 460 F. App'x at 512–13. The ALJ in this case appears to have made the same error as the ALJ did in *Island Creek*. While the ALJ in this case quoted the "substantially contributing cause" language of 20 C.F.R. § 718.204(c) at the beginning of his analysis, he also cited *Peabody* for the proposition that pneumoconiosis must be "more than a *de minim[i]s* or 'infinitesimal' factor in the miner's total disability." The Board in the instant case said that the applicable standard was whether Groves' disability was "due, in part," to pneumoconiosis or "pneumoconiosis [is] a contributing cause of some discernible consequence to claimant's totally disabling respiratory impairment." This "some discernible consequence" language also comes from *Peabody*, 127 F.3d at 507. As the *Island Creek* court explained, the *Peabody* decision was premised on the existence of a gap between "the substantially contributing cause standard," which it found to be too burdensome, and the "of some discernible consequence" standard, which it adopted. Now that the regulations include the "substantially contributing cause language," the *Peabody* test is no longer good law to the extent that the case permits a miner to establish disability causation by proving anything less than that his pneumoconiosis was a substantially contributing cause of his disability.

On remand, the agency should apply the regulatory provision with respect to whether a miner's pneumoconiosis is a substantially contributing cause of the miner's disability. *Id*.

The ALJ did not err when he referred to the preamble to the regulations. This court has heard and rejected these kinds of arguments before. In *A & E Coal Co. v. Adams*, 694 F.3d 798, 801–02 (6th Cir. 2012), we held that an ALJ did not err by looking "to the preamble, in addition to the applicable regulations, to assess Dr. Jarboe's and Dr. Rasmussen's credibility." That is essentially what happened here. The ALJ consulted a part of the preamble that contains a discussion of medical literature on black lung disease. The ALJ was in effect using the preamble to test whether the theories of Arch's doctors were consistent with medical literature.

> The preamble is an instructive resource that explains the DOL's evaluation of conflicting medical and scientific literature on the same complex issues with which the ALJ in this case was confronted. In the face of conflicting opinions from two credible sources, it was reasonable for the ALJ to give greater weight to the testimony of the medical expert whose opinion was supported by the

prevailing view of the medical and scientific community as reflected in the regulatory preamble.

*Little David Coal Co. v. Dir., OWCP*, 532 F. App'x 633, 636 (6th Cir. 2012). The *A & E* court did suggest that reliance on the preamble might violate the Administrative Procedure Act if the ALJ treated the preamble as binding. 694 F.3d at 801–02. But there is no indication of such reliance here.

Arch also faults the ALJ for relying on "regulatory intent." It is not entirely clear what the ALJ meant by this phrase. Arch seems to imply that by regulatory intent, the ALJ was invoking a "miners win" rule, *i.e.*, a presumption in favor of granting benefits. Because no such rule exists, invoking such a presumption would clearly be error. But there is nothing to indicate that the ALJ was invoking such a presumption. In context, it seems far more likely that the ALJ was using regulatory intent to refer to the language that the decision quoted from the preamble, which was not in error.

Finally, we need not address the so-called fifteen-year presumption, which the ALJ held was not applicable. The presumption, which had previously been in effect but had lapsed until it was revived by the Affordable Care Act, states that "if a miner was employed for fifteen years or more in one or more underground coal mines, and . . . [there is appropriate] evidence [that] demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis." 30 U.S.C. § 921(c)(4). The presumption applies only to "underground coal mines." The ALJ held that the presumption did not apply to Groves because he failed to show that his aboveground mining work was equivalent to underground work. If Groves had been able to establish that the fifteen-year presumption applies to him, then it would have been up to Arch to disprove that Groves' "occupational coal dust exposure was a contributing cause of his disability." *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1071 (6th Cir. 2013). But Groves raises the argument on appeal only tangentially in the facts section of his brief, presumably as an alternative basis for upholding the Board's decision. "[I]t is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

Similarly, Groves raised this issue before the Board in only a cursory fashion.  Generally, this court will not review issues not properly raised before the Board.  *See Cox v. Benefits Review Bd.*, 791 F.2d 445, 447 (6th Cir. 1986).  We decline to do so here.

For the foregoing reasons, the order granting benefits is vacated, and the case is remanded to the Board for proceedings consistent with this opinion.