NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0067n.06

No. 22-3135

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

LITTLE T COAL COMPANY; OLD
REPUBLIC INSURANCE COMPANY,

     Petitioners,

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF
LABOR; MARY BAILEY, widow of
Andy M. Bailey,

     Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW OF A
DECISION AND ORDER OF THE
BENEFITS REVIEW BOARD

OPINION

FILED
Feb 02, 2023
DEBORAH S. HUNT, Clerk

Before: BATCHELDER, STRANCH, and DAVIS, Circuit Judges.

STRANCH, J., delivered the opinion of the court in which DAVIS, J., joined. BATCHELDER, J. (pp. 18–21), delivered a separate dissenting opinion.

**JANE B. STRANCH, Circuit Judge.** Petitioners Little T Coal Company and its insurer seek review of the Black Lung Benefits Board's affirmance of an Administrative Law Judge's determination that Little T Coal's former employee, Andy Bailey, was entitled to benefits under the Black Lung Benefits Act. Because the Board correctly concluded that substantial evidence supported the ALJ's factual findings, we **DENY** the petition for review.

## I. FACTUAL BACKGROUND

This case relates to a claim for disability benefits under the Black Lung Benefits Act (BLBA), 30 U.S.C. §§ 901-944, initially filed by the decedent Andy Bailey, a former coal miner, and now pursued by his widow, Mary Bailey (the Claimant).

Andy Bailey was born in 1942 and was 75 years old at the time of his 2017 deposition. He worked in coal mines in Tennessee intermittently from 1977 to 1987. From 1977 through 1981, he worked for Little T Coal, Inc. In 1987, Bailey was working for another coal company when he sustained a serious injury on the job that required four back surgeries. He later had four heart attacks and three heart surgeries, the last of which was in 1998. By 2000, Bailey had both legs amputated due to peripheral vascular disease and circulatory problems. He was on two liters of oxygen at the time of his deposition. Bailey testified that he started smoking cigarettes in about 1984 and that he was smoking one half pack to one pack daily at the time of his 2017 deposition.

Bailey filed this claim for federal black lung benefits on November 3, 2016.[1] After the District Director of the Department of Labor's (DOL) Office of Workers' Compensation Programs (OWCP) determined that Bailey was entitled to benefits in January 2017, Petitioners Little T Coal requested a de novo hearing before the Office of Administrative Law Judges. The ALJ held a hearing in June 2019. Bailey did not attend that hearing, but the ALJ considered his 2017 deposition.

On April 23, 2020, the ALJ issued an order and opinion upholding the District Director's award of benefits to Bailey and ordering Little T Coal to pay those benefits. The ALJ found that "33 pack years beginning in 1984 and continuing" was a reasonable estimate of Bailey's smoking

---

[1] Bailey filed two previous claims for BLBA benefits: One in November 2008, which the District Director denied for reason of abandonment; and one that Bailey withdrew, and which was therefore treated as though it was never filed. 20 C.F.R. 725.306(b).

history and credited Bailey with 2.96 years of coal mine employment. Based on the length of his coal mine employment, Bailey was not eligible for the statutory presumption that any totally disabling respiratory or pulmonary impairment was "due to pneumoconiosis." 30 U.S.C. § 921(c)(4). Instead, Bailey was required to show that he had pneumoconiosis through medical evidence.

The ALJ reviewed the following medical evidence to make her findings. First, the ALJ considered two x-ray readings: (1) a November 2016 x-ray that was interpreted by one radiologist to be positive for clinical pneumoconiosis and by two radiologists to be negative for clinical pneumoconiosis; and (2) an August 2017 x-ray that was interpreted by only one radiologist, who found it negative for clinical pneumoconiosis. The ALJ also evaluated three medical opinions that are relevant here: (1) a report from Dr. Elie Mansour based on his exam of Bailey provided by the Department of Labor; (2) an employer-submitted report from Dr. Abdul K. Dahhan, and (3) an employer-submitted report from Dr. David M. Rosenberg. In short, all three physicians agreed that Bailey suffered from COPD and that Bailey's respiratory impairment was caused by cigarette smoking; only Dr. Mansour and Dr. Rosenberg found Bailey totally disabled due to that impairment; and only Dr. Mansour found that the impairment was also caused by Bailey's coal mine employment.

Specifically, Dr. Dahhan diagnosed Bailey with an obstructive ventilatory impairment, relying on statistical averaging to conclude that the impairment was consistent with Bailey's smoking habit and not caused or aggravated by coal dust inhalation. Conceding that he could not rule out that coal dust caused the pulmonary injury, Dr. Dahhan represented that he did not believe that coal dust was a "significant contributory or causative factor." Dr. Rosenberg found that Bailey was totally disabled due to a pulmonary injury but attributed that disability solely to smoking,

basing his conclusion on the assumption that cigarette smoke is more harmful to the lungs and causes a different kind of lung injury than coal dust inhalation.

Dr. Mansour's report diagnosed Bailey with COPD, finding a severe and totally disabling pulmonary impairment based on the positive reading of the 2016 x-ray, a physical exam, pulmonary function tests (PFTs), arterial blood gas studies, and a review of Bailey's employment and smoking history. Mansour determined that Bailey's COPD was caused by a combination of cigarette smoking and coal dust exposure. Mansour responded to a DOL form question by attributing 90% of Mr. Bailey's disabling disease to smoking and 10% to coal dust inhalation, based on Bailey's initially recorded employment history of six years of coal mining.[2] The DOL District Director asked Mansour to reconsider his conclusions after the Director found that Bailey had been employed as a coal miner for two years and ten months. Mansour responded with a letter that reaffirmed his belief that Bailey had COPD caused by smoking and coal dust exposure but estimating that Bailey's chronic respiratory failure was 95% attributable to smoking and 5% attributable to coal dust inhalation.

Petitioners deposed Dr. Mansour two years after he examined Bailey. When asked why he picked the 5% causation figure, Dr. Mansour acknowledged that the estimate was "just [his] opinion," in that he was "not aware of studies showing equivalency of how many years" of mining might equate to a given percentage. When asked whether the five percent cut-off was "kind of like arbitrary," Dr. Mansour answered "yes," reiterating that it was based on his opinion of the amount of damage to Bailey's airways in addition to damage caused by smoking. Finally, Dr. Mansour added that he had also based his conclusion on the positive reading of the 2016 x-ray.

---

[2] Although the DOL form asked for causation percentages, an expert need not necessarily identify the precise extent to which coal dust exposure contributed to an impairment to establish pneumoconiosis. *See Collieries, Inc. v. Barrett*, 478 F.3d 350, 356 (6th Cir. 2007).

When asked whether his opinion would be influenced by a negative x-ray finding, Dr. Mansour agreed that it would—but he also agreed that the positive x-ray reading had only "bolstered" his opinion.

Based on this medical record, the ALJ first concluded that substantial evidence did not support a finding of clinical pneumoconiosis, which consists of "those diseases recognized by the medical community as pneumoconioses." 20 C.F.R. § 718.201(a)(1). The ALJ determined that the x-ray evidence did not support a clinical pneumoconiosis finding, because the 2017 x-ray was found negative for pneumoconiosis and the 2016 x-ray was "in equipoise" due to the split opinions of the radiologists who interpreted it. The ALJ likewise concluded that medical opinion evidence did not support a clinical pneumoconiosis finding: Dr. Dahhan and Dr. Rosenberg found no clinical pneumoconiosis, and the ALJ reasoned that Dr. Mansour's opinion finding of clinical pneumoconiosis was entitled to diminished weight because it relied on the 2016 x-ray that the ALJ had found inconclusive.

However, the ALJ then concluded that the record supported a finding of legal pneumoconiosis, a category that is broader than clinical pneumoconiosis and includes "any chronic lung disease or impairment and its sequelae arising out of coal mine employment." 20 C.F.R. § 718.201(a)(2). Weighing each medical expert's opinion, the ALJ concluded that Dr. Dahhan's and Dr. Rosenberg's opinions suffered from critical flaws: Dr. Dahhan's opinion conflicted with the DOL's position that coal dust and smoking caused the same type of emphysema, and both Dr. Dahhan and Dr. Rosenberg's opinions relied on statistical averaging, which the Preamble to the Black Lung Benefits regulations recognizes can understate the effects of coal mine dust exposure in individuals. *See* Fed. Reg. 79,920, 79,941 (Dec. 20, 2000). In contrast, the ALJ found that Dr. Mansour's opinion concluding that coal dust played a significant role in causing Bailey's

impairment was "impartial, well-reasoned, and well-documented" and therefore "entitled to significant weight." The ALJ credited Dr. Mansour's opinion and found that Bailey's COPD constituted legal pneumoconiosis.

Finally, the ALJ concluded that Bailey was "totally disabled" by his impairment, noting that Dr. Mansour and Dr. Rosenberg agreed that Bailey was totally disabled by his COPD and that the PFTs supported a finding of total disability. The ALJ also concluded that the legal pneumoconiosis was a "substantially contributing cause" of Bailey's total disability, reasoning that "[e]xtended discussion" of the factor was unnecessary, because the ALJ had already determined that Bailey suffered from legal pneumoconiosis and that the COPD was totally disabling.

The employer appealed this decision to the DOL's Benefits Review Board, which affirmed Bailey's award on December 21, 2021, over the dissent of Chief Judge Boggs. The Board held that substantial evidence supported the ALJ's finding of legal pneumoconiosis, rejecting as forfeited and meritless Petitioners' contentions that the ALJ overlooked Dr. Mansour's partial reliance on the 2016 x-ray with respect to his legal pneumoconiosis opinion. Petitioners now seek review of the Board's decision.

## II. STANDARD OF REVIEW

"In reviewing an appeal from the Board, we review the Board's legal conclusions de novo." *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1068 (6th Cir. 2013).[3] But to the extent that review

---

[3] The parties dispute whether this Court reviews the ALJ's decision or the Board's decision. As we have clarified, "[t]echnically, this Court is reviewing the [Board's] decision affirming the ALJ, not the ALJ's decision itself. Thus, we do not consider whether the [Board's] decision was supported by substantial evidence, but whether the [Board] correctly concluded that substantial evidence supported the ALJ's decision." *Eastover Mining Co. v. Williams*, 338 F.3d 501, 508 n.9 (6th Cir. 2003); *see also Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 750 (6th Cir. 2019) ("[C]ourts of appeals have jurisdiction to review only orders of the Board, not of administrative law judges."); 33 U.S.C. § 921(c) (providing that any person adversely affected by a final order of the Board "may obtain a review *of that order* in the United States court of appeals for the circuit in which the injury occurred") (emphasis added).

of factual issues is required, "we do so with much greater deference." *Eastover Mining Co. v. Williams*, 338 F.3d 501, 508 (6th Cir. 2003). When determining "whether the ALJ reached the correct result after weighing conflicting medical evidence," our "[s]cope of review is exceedingly narrow," and "[a]bsent an error of law, findings of facts and conclusions flowing therefrom must be affirmed if supported by substantial evidence." *Peabody Coal Co. v. Odom*, 342 F.3d 486, 489 (6th Cir. 2003). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Big Branch Res., Inc.*, 737 F.3d at 1068-69 (quoting *Kolesar v. Youghiogheny & Ohio Coal Co.*, 760 F.2d 728, 729 (6th Cir. 1985)). We do not reweigh the evidence or substitute our judgment for the ALJ's, and we may affirm an ALJ's decision even if "we would have taken a different view of the evidence were we the trier of facts." *Big Branch Res., Inc.*, 737 F.3d at 1068-69 (quoting *Ramey v. Kentland Elkhorn Coal Corp.*, 755 F.2d 485, 486 (6th Cir. 1985)).

## III. ANALYSIS

The Petitioners argue for reversal on the basis that the record before the ALJ did not support findings of legal pneumoconiosis and total disability. The OWCP Director filed a brief agreeing that the legal pneumoconiosis finding was not supported by substantial evidence, but arguing that remand rather than reversal is the appropriate remedy, and proposing that the court need not reach Petitioner's disability causation arguments. Mrs. Bailey argues that the petition for review should be denied because the Board correctly found that the ALJ's findings as to legal pneumoconiosis and disability causation were supported by substantial evidence.

### A. Legal Standard

A miner is entitled to benefits if he establishes that: (1) he "[h]as pneumoconiosis," (2) "[t]he pneumoconiosis arose out of coal mine employment," (3) he "[i]s totally disabled," and

(4) "[t]he pneumoconiosis contributes to the total disability." 20 C.F.R. § 725.202(d)(2). Pneumoconiosis is proved by demonstrating that the miner has either clinical or legal pneumoconiosis. *See Eastover Mining*, 338 F.3d at 509; 20 C.F.R. § 718.201(a). Clinical pneumoconiosis includes "those diseases recognized by the medical community as pneumoconioses," while legal pneumoconiosis is a broader concept encompassing lung diseases caused by employment in coal mines. 20 C.F.R. § 718.201(a).

### B. Legal Pneumoconiosis

DOL regulations define legal pneumoconiosis as "any lasting lung impairment that is 'significantly related to, or substantially aggravated by' exposure to coal dust." *Island Creek Coal Co. v. Young*, 947 F.3d 399, 404 (6th Cir. 2020) (quoting 20 C.F.R. § 718.201(b)). Under the Act's implementing regulations, a miner establishes a lung impairment that is "significantly related to" exposure to coal dust and therefore constitutes legal pneumoconiosis "by showing that his disease was caused 'in part' by coal mine employment." *Arch on the Green, Inc. v. Groves*, 761 F.3d 594, 598-99 (6th Cir. 2014); 20 C.F.R. § 718.203(a). Relevant here, the existence of pneumoconiosis may be shown by "[a] chest X-ray" or a finding by "a physician, exercising sound medical judgment, notwithstanding a negative X-ray, [who] finds that the miner suffers or suffered from pneumoconiosis." 20 C.F.R. § 718.202(a). Although x-rays are often helpful in diagnosing pneumoconiosis, "a claim for benefits must not be denied solely on the basis of a negative chest X-ray." 20 C.F.R. § 718.202(b).

#### 1. Legal Arguments

On appeal, Petitioners argue that the ALJ's opinion was not supported by substantial evidence because Dr. Mansour's opinion failed to show a lung impairment significantly related to coal mine employment. Raising new legal arguments, Petitioners now propose that: (1) Dr.

Mansour's opinion diagnosing legal pneumoconiosis is per se invalid because it conflicted with the regulations by partially relying on an x-ray, and (2) the ALJ applied the wrong standard by failing to require Bailey to present "competent evidence" connecting his pneumoconiosis to his coal mine employment.

Petitioners did not raise these arguments before the Board. Regulations require that petitions for review identify "specific issues to be considered on appeal" by the Board. 20 C.F.R. § 802.211(a). As we explained in *Island Creek Coal Co. v. Bryan*, "[i]f a party flouts the regulation by failing to raise with the Board an issue that the party asserts in court, the court generally has no basis for 'setting aside' the *Board's* order (even assuming the *administrative law judge* erred)." 937 F.3d at 750. Because Petitioners failed to raise these arguments before the Board, these arguments were not exhausted and provide no basis for setting aside the Board's order affirming the ALJ's decision. *See id.*

Even if these arguments had been appropriately exhausted, they would fail on the merits. First, Petitioners' argument that a doctor's reliance on an x-ray reading "fails, as a matter of law, to diagnose 'legal' pneumoconiosis under Section 718.202(a)(4)" conflicts with the regulation's text, which states that legal pneumoconiosis may be established "notwithstanding a negative X-ray" through a medical opinion. 20 C.F.R. 718.202(a)(4). Petitioners cite *Eastover Mining* to support their proposition, but that case held only that "an ALJ may not rely on a doctor's opinion that a patient has medical pneumoconiosis when the physician bases his opinion *entirely* on x-ray evidence the ALJ has already discredited." *Eastover Mining*, 338 F.3d at 514 (emphasis added). Nothing in the regulations' text or our precedent precludes an ALJ from crediting a doctor's opinion that relies only partially on an x-ray that it found to be negative.

Second, Petitioners argue that the ALJ never found that Dr. Mansour presented "competent evidence" linking Bailey's legal pneumoconiosis to his coal mine employment. But a finding of legal pneumoconiosis necessarily includes a finding that the condition is caused by coal mine employment, and our Circuit has clearly held that a separate causal inquiry need not be made where an ALJ finds that a totally disabling condition constitutes legal pneumoconiosis. *See, e.g.*, *Brandywine Explosives & Supply v. Dir., OWCP*, 790 F.3d 657, 668-69 (6th Cir. 2015) (explaining that disability causation need not be addressed separately where "the only remaining question was what caused the additional respiratory impairment—an issue resolved by the earlier finding of legal pneumoconiosis"); *Morrison v. Tenn. Consol. Coal Co.*, 644 F.3d 473, 478 n.3 (6th Cir. 2011) (quoting 20 C.F.R. § 718.201(a)(2)) (explaining that legal pneumoconiosis includes, by definition, "any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment"). Petitioners' legal arguments are thus neither properly exhausted nor meritorious.

2. Factual Arguments

Next, Petitioners and the Director argue that the ALJ improperly relied on Dr. Mansour's legal pneumoconiosis diagnosis without adequately accounting for his reliance on the 2016 x-ray, which Petitioners propose was "pivotal" to his conclusion that coal dust contributed to Bailey's impairment. But this argument has also not been exhausted. Although Petitioners raised it before the Board, they failed to do so before the ALJ. Instead, Petitioners challenged the x-ray evidence before the ALJ only when contesting whether Mr. Bailey had established *clinical* pneumoconiosis. As to legal pneumoconiosis, Petitioners argued only that Dr. Mansour based his opinion "*exclusively* on Claimant's work history and not on any diagnostic criteria at all." The Board therefore concluded that Petitioners forfeited their argument that Dr. Mansour relied on a discredited x-ray reading, because that position was contrary to the one they argued below.

Circuit precedent provides that parties forfeit arguments that were not raised before the ALJ. *Joseph Forrester Trucking v. Dir., OWCP*, 987 F.3d 581, 591 (6th Cir. 2021). The Petitioners and Director argue that the Petitioners' brief to the ALJ directed the ALJ to generally assess the basis for Dr. Mansour's opinion. The contention that Dr. Mansour's diagnosis of legal pneumoconiosis was not based on any objective medical evidence, however, conflicts with the new argument that Dr. Mansour *did* consider objective evidence but the evidence he considered was discredited. We agree with the Board's assessment that Petitioners failed to exhaust this new argument.

Petitioners nevertheless propose that their argument relating to the x-ray should be characterized as a challenge to the ALJ's "failure to consider all [the] relevant evidence," which would properly be raised for the first time on appeal. But the ALJ's opinion shows that she did consider all the relevant evidence. As the Board majority pointed out, the ALJ first found that Dr. Mansour's reliance on the x-ray undermined his clinical pneumoconiosis opinion, but then permissibly found Dr. Mansour's description of objective testing and conclusions regarding coal dust exposure were sufficient to establish legal pneumoconiosis. Petitioners failed to exhaust this argument by failing to raise it before the ALJ.

Even if Petitioners had exhausted their factual argument related to the x-ray, moreover, that argument also fails on the merits under the "narrow" standard of review that applies here. Although the Director and Petitioners cite *Eastover Mining* for the proposition that an expert's reliance on a discredited x-ray requires remand (a narrower position than Petitioners' argument that reliance on *any* x-ray is per se invalid), as discussed above, *Eastover Mining* held that an ALJ may not rely on a doctor's opinion that is based "*entirely*" on discredited x-ray evidence. 338 F.3d at 514 (emphasis added). Other cases have clarified that an expert's *partial* reliance on a

discredited x-ray does not prevent an ALJ from crediting that opinion if it was also based on other evidence. In *Martin v. Ligon Preparation Co.*, the Court determined that the ALJ failed to adequately explain why a doctor's report did *not* support a legal pneumoconiosis finding where the doctor relied on an x-ray reading that the ALJ determined insufficient to establish pneumoconiosis, but also relied on other evidence that could have established legal pneumoconiosis. 400 F.3d 302, 306 (6th Cir. 2005) ("Even setting aside Martin's positive x-ray reading, which the ALJ had already determined to be insufficient to establish pneumoconiosis, Dr. Rasmussen's consideration of the other evidence . . . .alone would have been sufficient to support a finding of legal pneumoconiosis."). And as *Cumberland River Coal Co .v. Banks* explains, an ALJ can credit doctors' opinions that rely on discredited x-rays but also consider other evidence. 690 F.3d 477, 487 (6th Cir. 2012) (finding ALJ's opinion supported by substantial evidence where doctors partially relied on x-rays but based legal pneumoconiosis diagnoses on evidence including "pulmonary function and blood gas studies . . . together with [Banks's] coal mine employment and smoking histories").

Here, like in *Martin*, Dr. Mansour's opinion was not based solely on the positive x-ray reading. As the ALJ and Board recognized, Dr. Mansour also based his evaluation on a physical examination, clinical testing, CT scan, and Bailey's medical history and coal mine employment history. Thus, while Dr. Mansour relied in part on the x-rays for the legal pneumoconiosis finding, the ALJ was not precluded from crediting Dr. Mansour's opinion because it was supported by additional objective medical evidence.

Petitioners also argue that the x-ray reading was pivotal to Dr. Mansour's finding of legal pneumoconiosis, pointing to Dr. Mansour's deposition testimony that a negative x-ray finding by the judge might "influence his opinion" on the significance of coal dust. But Dr. Mansour did not

represent that his opinion would *change* if the x-ray were negative, only that it would be "influenc[ed]"—and he ultimately stated that the x-ray only "bolstered" his opinion regarding legal pneumoconiosis.

Petitioners and the Director argue that the ALJ failed to address the significance of Dr. Mansour's reliance on the x-ray findings. But as the Board explained, the ALJ did address Dr. Mansour's reliance on the x-ray when she found that it undermined his opinion on the narrower category of clinical pneumoconiosis. A logical reading of this record shows that the ALJ considered, discounted, and simply did not reiterate, Dr. Mansour's partial reliance on the x-ray with respect to legal pneumoconiosis. She then permissibly determined that his diagnosis of legal pneumoconiosis was sufficiently based on other factors to be persuasive in contrast to the other experts' opinions.[4]

Accordingly, even if we consider Petitioners' forfeited factual arguments on the merits, the ALJ permissibly credited the other evidence on which Dr. Mansour's opinion relied, including his own identification of emphysema on the x-ray; his description of additional objective testing that showed that coal dust caused a functional impairment; and his repeated conclusion that despite Bailey's smoking history, his history of coal dust exposure was sufficient to significantly cause or aggravate his impairment. The Board correctly found that substantial evidence supported the ALJ's finding of legal pneumoconiosis based on Dr. Mansour's opinion.

## C. Disability Causation

Finally, Petitioners alone argue that the record does not support a finding that Bailey's total disability is caused by pneumoconiosis. In the Black Lung Benefits context, disability causation

---

[4] Given that Petitioners did not raise this argument before the ALJ with respect to legal pneumoconiosis, they cannot fairly fault the ALJ for not specifically repeating the conclusion that the x-ray was discredited in the legal pneumoconiosis analysis.

refers to the statutory requirement that a miner be "totally disabled due to pneumoconiosis." *See* 30 U.S.C. § 901(a). A miner's total disability is "due to" pneumoconiosis when it is a "substantially contributing cause of the miner's totally disabling respiratory or pulmonary impairment." 20 C.F.R. § 718.204(c)(1). Petitioners appear to challenge the controlling "substantially contributing cause" causation standard, arguing at length that it is too lenient.

First, this issue was—again—not exhausted below. Petitioners' brief before the Board did not assert that the ALJ applied the wrong causation standard; instead, it cited the exact standard that the ALJ applied. Petitioners therefore cannot raise this argument now. *Joseph Forrester Trucking*, 987 F.3d at 592-593. Even if Petitioners had exhausted this issue, moreover, it would not be implicated by the facts of this case. Petitioners have never disputed that Bailey is totally disabled by a respiratory impairment, and do not challenge the ALJ's finding that the impairment was COPD. We have repeatedly held that where there is no dispute that a respiratory impairment is totally disabling, the only remaining question is whether the impairment constitutes legal pneumoconiosis. *See, e.g.*, *Island Creek Ky. Mining v. Ramage*, 737 F.3d 1050, 1062 (6th Cir. 2013); *Brandywine Explosives & Supply v. Director, OWCP*, 790 F.3d at 668-69. No independent causation inquiry is required on the facts presented in this record, so we need not reach Petitioners' challenge to the statutes' causation standards.

We also reject Petitioners' argument on the merits. Petitioners rely on out-of-circuit, obsolete caselaw from the Seventh Circuit to argue for a higher causation threshold, citing a 1991 Seventh Circuit concurrence suggesting that the Act's language was initially interpreted to require that pneumoconiosis be a 51% cause of total disability. *Compton v. Inland Steel Coal Co.*, 933 F.2d 477, 483 (7th Cir. 1991) (Coffey, J., concurring). The *Compton* panel majority rejected the concurrence's interpretation as "far-flung," and held that pneumoconiosis was required to be a

necessary, but not sufficient cause of total disability. 933 F.2d at 480-82. In any event, our Circuit has roundly rejected the necessary-but-not-sufficient standard. *Cross Mountain Coal, Inc. v. Ward*, 93 F.3d 211, 217 (6th Cir. 1996); *Brandywine Explosives & Supply*, 790 F.3d at 668.

Petitioners also appear to misconstrue the disability causation inquiry entirely, arguing that coal mine employment—not legal pneumoconiosis—contributed too little to Bailey's total disability. This is not the standard. Disability causation concerns whether a miner's disability is "due to pneumoconiosis," not whether it is due to coal mining. 30 U.S.C. § 901(a). As the sole support for their misconstruction of the standard, Petitioners point to another Seventh Circuit case that so misstated the regulation and statute that another Seventh Circuit panel clarified its holding within the year. *Compare Shelton v. Dir., OWCP*, 899 F.2d 690, 693 (7th Cir. 1990) (suggesting that "mining" must be a necessary but not sufficient cause of a miner's disability) *with Hawkins v. Dir., OWCP*, 907 F.2d 697, 704 & n.10 (7th Cir. 1990) (clarifying that a claimant who proves that legal pneumoconiosis was a cause of their disability would be eligible for benefits "notwithstanding the implication in *Shelton* that a direct link is required between the claimant's mining and his or her total disability").

Finally, the Petitioners concede that our clarification of the causation standard in *Arch on the Green* controls and requires a determination of whether pneumoconiosis was a "substantially contributing cause" of a respiratory disability. 761 F.3d at 599. As the Director and Mrs. Bailey argue, once the ALJ found that Bailey's COPD—which was totally disabling—was legal pneumoconiosis, there was no error in finding that those facts also established that Bailey was totally disabled due to pneumoconiosis. Consequently, under the *Arch on the Green* standard, the

ALJ's finding that Bailey's pneumoconiosis was a substantially contributing cause of his disability was supported by substantial evidence.[5]

### D. The Credibility of Dr. Mansour's Opinion

Petitioners' arguments related to Dr. Mansour's credibility warrant only brief discussion. To start, Petitioners argue that Dr. Mansour's opinion should have been excluded under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993). But Federal Rule of Evidence 702 does not apply under the BLBA. *See* 33 U.S.C. § 923(a); 30 U.S.C. § 932(a); 20 C.F.R. § 725.455(b). Petitioners next propose that the Administrative Procedure Act's prohibition on "irrelevant, immaterial, or unduly repetitive evidence" prohibit consideration of Dr. Mansour's opinion, 5 U.S.C. § 556(d), or that his opinion was not based on "objective medical evidence" as required by 20 C.F.R. § 718.202(a)(4). But these arguments fail because, as the ALJ recognized, Dr. Mansour's opinion was based on objective evidence, including PFTs, an x-ray, smoking history, coal dust exposure history, and physical exam.

Petitioners also argue that Dr. Mansour's opinion that coal dust was a significant cause of Bailey's disability was not a "reasoned medical opinion" as required by the statute, pointing to Dr. Mansour's acknowledgment in his deposition testimony that the 5% cut-off was "arbitrary." But again, in context, Dr. Mansour's use of the word "arbitrary" reflected only his acknowledgment that his assessment was based on his medical opinion, and that he was not aware of any medical literature establishing specific percentage thresholds. Regardless, a claimant is not required to

---

[5] To the extent that we generously construe Petitioners' arguments that *coal dust* was not a substantially contributing cause of Mr. Bailey's disability as a challenge to the ALJ's legal pneumoconiosis disease causation finding, those arguments are unavailing. Petitioners propose that Dr. Mansour found that coal dust was a substantially contributing cause of Bailey's disability based solely on the x-ray and an "arbitrary cutting." Again, this argument ignores that Dr. Mansour's opinion relied on a variety of data, including PFTs, smoking history, coal dust exposure history, and the physical exam, to determine that coal dust substantially caused his COPD. In context, Dr. Mansour's use of the word "arbitrary" reflects only that his assessment was based on his medical opinion, and his acknowledgment he was not aware of any medical literature establishing specific percentage thresholds.

establish what portion of their disease is due to non-mine and mine exposure. *Arch on the Green*, 761 F.3d at 598.

Finally, Petitioners assert that the ALJ improperly treated Dr. Mansour's opinion as more reliable because he was a representative of the Department of Labor. But the ALJ only referred to Dr. Mansour in passing as "impartial," without further elaboration. We agree with the Board that Petitioners "make too much out of the ALJ's simple use of the word 'impartial' in describing Dr. Mansour." And Petitioners' argument that Dr. Mansour was untrustworthy because he had previously treated Bailey is meritless. Our precedent holds that treating physicians' opinions warrant "the kind of critical analysis an ALJ should apply when considering any expert opinion" and "get the deference they deserve based on their power to persuade." *Eastover Mining*, 338 F.3d at 513. The ALJ did not abuse her discretion in finding Dr. Mansour credible.

## IV. CONCLUSION

Because substantial evidence supported the ALJ's findings, we **DENY** this petition for review.

**ALICE M. BATCHELDER, Circuit Judge, dissenting.** I agree with the OWCP that Dr. Mansour's medical opinion, which was based on X-ray evidence of Bailey's lungs, is not substantial evidence of pneumoconiosis because Dr. Mansour was mistaken about the results of that X-ray evidence. I would remand for the ALJ to obtain and consider a medical opinion based on the true X-ray evidence. Because the majority sees it differently, I respectfully dissent.

**I.**

Bailey first went to work in a coal mine in 1977, when he was 35 years old, and he continued off and on for several years, accumulating about two years and ten months of time in the mine. The ALJ made a finding of 2.96 years. In 1984, Bailey took up cigarettes and smoked daily until his death in 2020. The estimate was 25 to 48 pack-years, but a doctor in 2017 estimated a 56-pack-year history. The ALJ made a finding of 33 pack years. By 2017, Bailey had several severe medical conditions, the most relevant here being emphysema and COPD.

When Bailey filed for black lung benefits from Little T and its insurer, the OWCP approved the claim. Little T requested an ALJ determination and, after submission of additional evidence and a hearing, the ALJ awarded benefits. At that hearing, the ALJ considered two X-rays of Bailey's lungs (from 2016 and 2017) and, relying on assessment by qualified experts, held that the X-rays did not establish coal-dust pneumoconiosis. The ALJ considered three medical opinions, two of which blamed cigarette smoking alone, not coal dust, for Bailey's emphysema and COPD. The ALJ rejected both as flawed and instead relied solely on Dr. Mansour's opinion that Bailey's coal mine exposure had caused pneumoconiosis, which led to his respiratory disability.

Initially, Dr. Mansour attributed the pneumoconiosis 90% to cigarette smoking and 10% to coal dust inhalation. But when told that Bailey had worked in the mine for only two years and

ten months, rather than the seven or eight years that Bailey had claimed, Dr. Mansour revised his estimate to 95% smoking and 5% coal dust inhalation. He testified at deposition:

Question: Why did you pick five percent causation by coal mine dust?

Dr. Mansour: It's a matter of opinion. I thought actually that his coal mining, even though it [was of] short [duration], it was enough to cause deposits of coal dust in his lungs *based on the x-ray report*.

. . .

Question: So [five percent is] based on an arbitrary number and, you know, your experience?

Dr. Mansour: Absolutely, yes. Just let me, I'll just add something to that. *Because of the x-ray* showing the pneumoconiosis, I thought it was a very significant exposure.

. . .

Question: So if the judge finds that the chest x-rays are actually negative, would that influence your opinion on the significance of the coal dust?

Dr. Mansour: It does, yes, sir, it does. I would say it does.

Question: So your opinion is bolstered by the positive x-ray reading?

Dr. Mansour: Yes.

I would take Dr. Mansour at his word and accept that he based his decision on the X-ray, i.e., he based his finding of pneumoconiosis on his mistaken belief that the X-ray evidence showed coal dust deposits in Bailey's lungs despite Bailey's minimal coal mine exposure.

It is obvious but nonetheless noteworthy that Dr. Mansour did *not* justify his revised opinion on a physical exam, pulmonary function tests, arterial blood gas tests, or a totality of the medical evidence—he based his opinion on the X-ray, and conceded that a negative X-ray would affect that opinion. Again, he did *not* answer that the totality of other evidence would overcome even a negative X-ray. In short, by his own concession, the negative X-rays render Dr. Mansour's prior opinion unreliable. But the ALJ relied on it anyway to find pneumoconiosis.

On appeal to the Benefits Review Board, the dissenting Board member explained that the ALJ's reliance on Dr. Mansour's opinion—despite his admission that it was based on the (mis-) diagnosis from the X-ray—was a failure to consider all relevant evidence, which was an error that warranted a remand for reconsideration or further explanation. The dissenting Board member further explained that "this was an error committed in the ALJ's decision," not a claim or argument subject to forfeiture for failure to anticipate such an error and raise it to the ALJ beforehand.

Similarly, in its brief to this court, the OWCP argues likewise: "In crediting Dr. Mansour's opinion, the ALJ overlooked obvious potential inconsistencies in the doctor's opinion, most notably his apparent reliance on [a] diagnosis of clinical pneumoconiosis by x-ray—which the ALJ [] determined was incorrect." At a minimum, the OWCP's position warrants consideration.

## II.

An ALJ's finding of fact is reviewed deferentially "to determine whether it is supported by substantial evidence and is consistent with applicable law." *Peabody Coal Co. v. Odom*, 342 F.3d 486, 489 (6th Cir. 2003). But when the "ALJ has improperly characterized the evidence or failed to account [for] relevant record material, deference is inappropriate and remand is required." *Eastover Mining Co. v. Williams*, 338 F.3d 501, 508 (6th Cir. 2003).

Because Dr. Mansour based his finding of pneumoconiosis primarily, if not exclusively, on the false-positive X-ray, that opinion is unsupported and unreliable (and possibly just wrong). And because the ALJ relied primarily, if not exclusively, on Dr. Mansour's faulty opinion, her determination is not based on substantial evidence and is not entitled to deference.

Backing up a step, Bailey's COPD is legal pneumoconiosis if it "was caused, *at least in part*, by coal mine employment." *Arch on the Green, Inc. v. Groves*, 761 F.3d 594, 598-99 (6th Cir. 2014) (emphasis added). The "in part" standard, in turn, requires proof that coal mine dust

exposure was "of some discernible consequence." *Island Creek Coal Co. v. Young*, 947 F.3d 399, 407 (6th Cir. 2020). It must be "more than a de minimis or infinitesimal contribution to the miner's total disability." *Arch on the Green*, 761 F.3d at 600 (quotation marks omitted).

Because Dr. Mansour admittedly relied on the false-positive X-ray and testified that a negative X-ray would affect his opinion on the significance of the coal dust exposure, I think it likely that, given the opportunity, Dr. Mansour would revise his opinion of the causation attributable to coal dust. To be sure, even without the support of X-ray evidence, Dr. Mansour might conclude that the coal dust exposure was "of some discernible consequence" to Bailey's COPD. Or he might deem it a de minimis or infinitesimal contribution that would not meet the standard for legal pneumoconiosis. As I see it, this is an issue to be addressed on remand.

**III.**

Because the majority sees this differently, I respectfully dissent.